STATE OF NORTH CAROLINA v. WAYNE BROOKS FOWLER, DEFENDANT

No. COA08-652

(Filed 19 May 2009)

**1. Appeal and Error— criminal case—appeal by State— remand from superior to district court**

The Court of Appeals granted *certiorari* for the State to appeal an interlocutory superior court order concluding that certain impaired driving statutes were unconstitutional.

**2. Appeal and Error— criminal case—appeal by State— impaired driving dismissal**

N.C.G.S. § 20-38.7(a) and N.C.G.S. § 15A-1432(e), read *in pari materia*, did not authorize the State to appeal a superior court order holding certain impaired driving statutes unconstitutional and remanding the matter to district court

**3. Constitutional Law— North Carolina constitution—impaired driving procedures—authority of courts not violated**

In a case involving the constitutionality of certain impaired driving statutes, the trial court erred by concluding that the matter was controlled by *State v. Tutt*, 171 N.C. App. 518, and that the legislature violated the Supreme Court's authority for the handling of impaired driving cases. The procedures at issue here did not apply to the Appellate Division, unlike the evidentiary rules involved in *Tutt*.

1

### 4. Constitutional Law— North Carolina constitution—court rules—impaired driving—authority of legislature

The General Assembly is constitutionally authorized to create rules of procedure and practice for the superior and district courts, and to prescribe the jurisdiction and powers of the superior courts, and a constitutional amendment was not required for the General Assembly to promulgate a rule of procedure and practice concerning impaired driving cases pertaining exclusively to superior and district courts.

### 5. Constitutional Law— separation of powers—impaired driving procedures—not properly raised—not violated

The trial court did not conclude that challenged provisions of impaired driving procedures in the courts violated separation of powers. Even if the issue had been properly raised on appeal, no usurpation of judicial power was discerned.

### 6. Constitutional Law— double jeopardy—pretrial motion and evidence—no attachment of jeopardy

In an action involving required pretrial motions for implied consent offenses and the State's right to appeal, the superior court erred by concluding that portions of N.C.G.S. §§ 20-38.6 and .7 violate the Former Jeopardy Clause of the United States Constitution. In North Carolina nonjury trials, jeopardy attaches when the court begins to hear evidence or testimony, and does not attach when the court is presented with evidence or testimony for a pretrial motion on a question of law.

### 7. Constitutional Law— fair trial—implied consent offenses—required pretrial motions

The requirement in N.C.G.S. § 20-38.6(a) that defendants charged with implied consent offenses in district court make pretrial motions to dismiss or suppress evidence did not infringe on the right to a fair trial, even though those defendants do not have the benefit of pretrial discovery. The statute allows defendants to make motions to dismiss or suppress during trial when there are newly discovered facts.

### 8. Constitutional Law— speedy trial—implied consent offenses—district court preliminary determination—State's appeal to district court

Defendants charged with implied consent offenses in district court are not deprived of the right to a speedy trial by the absence

of a specified time for the State's appeal from the district court's preliminary determination that it would grant a pretrial motion to dismiss or suppress. The General Assembly's decision to refrain from establishing a time for the State to give a notice of appeal will require an examination of the circumstances of each particular case.

**9. Constitutional Law— Due Process—implied consent offenses—pretrial motion requirements**

The trial court erred by holding that the pretrial motion requirements of N.C.G.S. §§ 20-38.6(a),(f) and 20-38.7(a) violate Due Process. The Legislature determined from the facts before it that the pretrial procedures in the challenged statutes would serve as a means to improve the safety of the motoring public in North Carolina, and the legislation was reasonably related to the valid objective sought to be obtained. Furthermore, there was no procedural due process violation.

**10. Constitutional Law— Equal Protection—implied consent offenses—required pretrial motions**

The trial court erred by concluding that the pretrial motion requirements of N.C.G.S. §§ 20-38.6(a),(f) and 20-38.7(a) for implied consent offenses in district court violate equal protection. All defendants charged with an implied consent offense appearing in district court are subject to the same procedural requirements and the challenged provisions had a rational relationship to a conceivable legitimate interest of the government.

**11. Motor Vehicles— impaired driving—motion to suppress—district court preliminary determination**

A preliminary determination that the district court would dismiss an impaired driving charge for lack of probable cause was remanded for a preliminary order indicating the district court's ruling on defendant's motion to suppress evidence of his arrest.

Appeal by the State from order entered 15 January 2008 by Judge Timothy S. Kincaid in Mecklenburg County Superior Court. Heard in the Court of Appeals 26 January 2009.

*Roy Cooper, Attorney General, by Sebastian Kielmanovich, Assistant Attorney General, and William B. Crumpler, Assistant Attorney General, for the State.*

*Wyrick Robbins Yates & Ponton LLP, by K. Edward Greene and Tobias S. Hampson, and Law Offices of Bush & Powers, by Bill Powers, for defendant-appellee.*

*Center for Death Penalty Litigation, by Thomas K. Maher, and The Ward Law Firm, P.A., by David J. Ward, for North Carolina Advocates for Justice, amicus curiae.*

MARTIN, Chief Judge.

On 2 January 2007, defendant Wayne Brooks Fowler was arrested for willfully operating a motor vehicle while subject to an impairing substance in violation of N.C.G.S. § 20-138.1. On 6 August 2007, defendant made a pretrial motion in district court in accordance with N.C.G.S. § 20-38.6(a) alleging that the arresting officer lacked probable cause to arrest him.

On 9 October 2007, the Mecklenburg County District Court entered a Preliminary Finding Granting Pretrial Motion to Dismiss in accordance with N.C.G.S. § 20-38.6(f). In its Preliminary Finding, after concluding that the arresting officer "did not possess probable cause to arrest and charge [d]efendant with Driving While Impaired," and that "a reasonable person, in same or similar circumstances could not believe the [d]efendant guilty of Driving While Impaired," the district court made the preliminary finding that it would grant defendant's motion and dismiss the charges against him for lack of probable cause.

The State gave notice of appeal to superior court from the district court's Preliminary Finding pursuant to N.C.G.S. § 20-38.7(a). The State's appeal was heard in Mecklenburg County Superior Court. On 15 January 2008, the superior court entered its Order in which it found that the district court's "Conclusions of Law granting the motion to dismiss are based upon the Findings of Fact that are cited in [its] order." The Order further concluded that N.C.G.S. §§ 20-38.6 and 20-38.7—which "allow[ed] the State to appeal the [d]istrict [c]ourt determination on [d]efendant's motion to dismiss based on a lack of probable cause"—violated the Equal Protection and Due Process Clauses of the United States and North Carolina Constitutions, the Former Jeopardy Clause of the United States Constitution, as well as Article I, Section 3 and Article IV, Section 1 of the North Carolina Constitution. The superior court remanded the matter to district court "for the entry of an order consistent with th[e superior c]ourt's findings." The State gave notice of appeal to this

Court and certified that the appeal was not taken for the purpose of delay. The State filed a petition for writ of certiorari on 10 June 2008, and defendant filed a motion to dismiss on 30 October 2008.

**[1]** In considering whether this appeal is properly before us, we are guided by two well-established principles. First, "[t]he [S]tate's right of appeal in a criminal proceeding is entirely statutory; it had no such right at the common law. [Accordingly, s]tatutes granting a right of appeal to the [S]tate must be strictly construed." *State v. Murrell*, 54 N.C. App. 342, 343, 283 S.E.2d 173, 173 (1981), *disc. review denied*, 304 N.C. 731, 288 S.E.2d 804 (1982). Second, "[a]s a general rule, the appellate courts will not review interlocutory orders entered by a superior court in a criminal case." *State v. Monroe*, 330 N.C. 433, 436, 410 S.E.2d 913, 915 (1991); *see also Veazey v. City of Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 ("An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy."), *reh'g denied*, 232 N.C. 744, 59 S.E.2d 429 (1950). "An appeal from such [an] order will be dismissed unless the order affects some substantial right and will work injury to the appellant if not corrected before appeal from the final judgment." *Privette v. Privette*, 230 N.C. 52, 53, 51 S.E.2d 925, 926 (1949).

In the present case, the State concedes that the superior court's 15 January 2008 Order from which it appeals is interlocutory, and does not argue that it will suffer injury if its appeal is not heard prior to entry of a final judgment in this matter. Nevertheless, the State asserts that it is authorized to appeal the superior court's 15 January Order pursuant to N.C.G.S. § 15A-1445(a)(1). We disagree.

N.C.G.S. § 15A-1445(a)(1) provides that the State "may appeal from the superior court to the appellate division . . . [w]hen there has been a decision or judgment dismissing criminal charges as to one or more counts," provided that "the rule against double jeopardy [does not] prohibit[] further prosecution." N.C. Gen. Stat. § 15A-1445(a)(1) (2007). Here, although the State concedes that the superior court's Order was not "a decision or judgment *dismissing* criminal charges" against defendant, *see id.* (emphasis added), the State asserts that it has a right of appeal pursuant to N.C.G.S. § 15A-1445(a)(1) because "*the effect* of the superior court's order [wa]s to dismiss the DWI charge whether or not the court pronounce[d] a dismissal per se." (Emphasis added.) However, since statutes authorizing an appeal by the State in a criminal case must be strictly construed, *see State*

*v. Harrell,* 279 N.C. 464, 466-67, 183 S.E.2d 638, 640 (1971), we decline to extend the application of N.C.G.S. § 15A-1445(a)(1) to grant the State a right of appeal to the Appellate Division from a superior court's interlocutory order which may have the same "effect" of a final order but requires further action for finality. Therefore, we hold the State has no statutory right of appeal to this Court pursuant to N.C.G.S. § 15A-1445(a)(1) from the superior court's 15 January 2008 Order.

**[2]** The State also asserts that it is authorized to appeal the superior court's 15 January Order pursuant to N.C.G.S. § 20-38.7(a) *in pari materia* with N.C.G.S. § 15A-1432(e). Again, we disagree.

When strictly construing a statute to determine whether it authorizes the State to appeal in a criminal case, we must "resort first to the words of the statute," and be certain to interpret the "words and phrases of a statute . . . contextually, in a manner which harmonizes with the underlying reason and purpose of the statute." *See In re Kirkman,* 302 N.C. 164, 167, 273 S.E.2d 712, 715 (1981). Additionally, while "the caption [of a statute] will not be permitted to control when the meaning of the text is clear," "[w]here the meaning of a statute is doubtful, its title may be called in aid of construction." *Dunn v. Dunn,* 199 N.C. 535, 536, 155 S.E. 165, 166 (1930). Further, "[w]hen multiple statutes address a single subject, this Court construes them *in pari materia* to determine and effectuate the legislative intent." *Brown v. Flowe,* 349 N.C. 520, 523-24, 507 S.E.2d 894, 896 (1998).

The title of the statute upon which the State relies as its authority to appeal the superior court's 15 January 2008 Order to *this Court* is "Appeal to *superior* court." *See* N.C. Gen. Stat. § 20-38.7 (2007) (emphasis added). N.C.G.S. § 20-38.7(a) provides, in part: "The State may appeal to superior court any district court preliminary determination granting a motion to suppress or dismiss. . . . *Any further appeal shall be governed by Article 90 of Chapter 15A of the General Statutes.*" N.C. Gen. Stat. § 20-38.7(a) (emphasis added). In addition, N.C.G.S. § 20-38.6(f), which was enacted pursuant to the same enabling legislation as N.C.G.S. § 20-38.7(a), *see* Motor Vehicle Driver Protection Act of 2006, ch. 253, § 5, 2006 N.C. Sess. Laws 1180-83, provides that, when a district court judge "preliminarily indicates" that a defendant's pretrial motion to suppress evidence or dismiss charges for an implied-consent offense made in accordance with N.C.G.S. § 20-38.6(a) "should be granted, the judge shall not enter a

final judgment on the motion until *after the State has appealed to superior court* or has indicated it does not intend to appeal." N.C. Gen. Stat. § 20-38.6(f) (2007) (emphasis added). In other words, according to the plain language of the statutory subsection immediately preceding N.C.G.S. § 20-38.7(a), the prohibition regarding the district court's entry of a final judgment granting a defendant's pretrial motion applies only to the State's appeal to *superior* court.

Further, N.C.G.S. § 15A-1432 provides, in part:

(a) Unless the rule against double jeopardy prohibits further prosecution, the State may appeal from the district court judge to the superior court:

    (1) When there has been a decision or judgment *dismissing* criminal charges as to one or more counts.

. . . .

(e) If the superior court finds that the order of the district court was correct, it must enter an order affirming the judgment of the district court. The State may appeal the order of the superior court to the appellate division upon certificate by the district attorney to the judge who affirmed the judgment that the appeal is not taken for the purpose of delay.

N.C. Gen. Stat. § 15A-1432(a)(1), (e) (2007) (emphasis added). In other words, N.C.G.S. § 15A-1432(a)(1) gives the State a statutory right of appeal to superior court from a district court's order *dismissing* criminal charges against a defendant, and N.C.G.S. § 15A-1432(e) gives the State a statutory right of appeal to this Court from a superior court's order affirming a district court's *dismissal*. However, the statutory right of appeal conferred upon the State pursuant to N.C.G.S. § 20-38.7(a) is only a right of appeal to superior court from a district court's *preliminary* determination indicating that it *would* grant a defendant's pretrial motion to *dismiss or suppress*.

Thus, we conclude that the General Assembly's reference to "[a]ny further appeal" in N.C.G.S. § 20-38.7(a) does not give the State a right of appeal to the Appellate Division pursuant to N.C.G.S. §15A-1432(e) after the State has appealed from district court to superior court pursuant to N.C.G.S. § 20-38.7(a). Therefore, we hold the State has no statutory right of appeal to this Court from the superior court's 15 January 2008 interlocutory Order. Accordingly, we grant defendant's motion to dismiss.

Nevertheless, this Court may issue a writ of certiorari "when no right of appeal from an interlocutory order exists." N.C.R. App. P. 21(a)(1). Having determined that the State has no right of appeal from the superior court's 15 January 2008 interlocutory Order, in light of the substantial questions at issue here, we exercise our discretion to grant the State's petition for writ of certiorari.

On 4 December 2003, Governor Michael F. Easley signed Executive Order No. 54, entitled "Governor's Task Force on Driving While Impaired," which provided for the reestablishment of a task force to serve as an ad hoc committee of the Governor's Highway Safety Commission. Exec. Order No. 54, 2004 N.C. Sess. Laws 893-95. The preamble of the Executive Order provided the following rationale for the reestablishment of the Task Force:

> WHEREAS, the operation of motor vehicles on our highways by persons while impaired constitutes a serious threat to the health and safety of our citizens; and
>
> WHEREAS, a large portion of the fatal crashes on our highways are alcohol related; and the "Booze It and Lose It" program has made driving while impaired a major area of emphasis; and
>
> WHEREAS, the State of North Carolina must consider strong measures designed to deter and prevent the operation of motor vehicles by persons while impaired . . . .

*Id.* at 893. The Task Force—ordered to be composed of at most thirty-five members, including representatives of law enforcement, the Judicial Branch, and the General Assembly—was charged with the following responsibilities:

> (a) Review the General Statutes of North Carolina applicable to driving while impaired;
>
> (b) Review proposals in other states designed to deter driving while impaired;
>
> (c) Consider legislative proposals to the North Carolina General Assembly; [and]
>
> (d) Recommend actions to reduce driving while impaired . . . .

*Id.* at 893-94. The Task Force was further directed to present the Governor with a final report, at which time the Task Force would be dissolved. *See id.* at 894. This Executive Order was amended on

16 April 2004 by Executive Order No. 57, which allowed the Governor to designate three co-chairs of the Task Force; however, the underlying rationale and the responsibilities identified in Executive Order No. 54 remained unchanged. *See* Exec. Order No. 57, 2004 N.C. Sess. Laws 900-02.

In furtherance of its "purpose . . . to make recommendations regarding how North Carolina's DWI system can be improved," and in keeping with the State's "history of being tough on impaired driving" "with the aim of reducing impaired driving," the Task Force proposed "solutions [to] specifically address the DWI arrest and all activities leading up to adjudication." *See* Governor's Task Force on Driving While Impaired, Final Report to Governor Michael F. Easley 7, 20 (Jan. 14, 2005) (hereinafter "DWI Final Report"). Among these solutions was its recommendation that "[a] specific procedure should be developed to prevent dismissals related to delays in processing and by the defendant's lack of access to witnesses." *See* DWI Final Report at 21.

House Bill 1048, which later became Session Law 2006-253, was introduced and filed on 31 March 2005 with the short title "Governor's DWI Task Force Recommendations" during the 2005-2006 Session of the North Carolina General Assembly. As ratified and later signed into law on 21 August 2006, the "Motor Vehicle Driver Protection Act of 2006" enumerated ten objectives said to address its purpose to establish "measures designed to improve the safety of the motoring public of North Carolina." *See* Motor Vehicle Driver Protection Act of 2006, ch. 253, 2006 N.C. Sess. Laws 1178.

In furtherance of the Act's objective to provide "procedures for investigating, arresting, charging, and judicial processing of impaired driving offenses," the General Assembly added Article 2D, entitled "Implied-Consent Offense Procedures," to the "Motor Vehicles" chapter of the General Statutes. *See id.* at 1178, 1180-83. Within this Article, a draft of which appeared in the Final Report prepared by the Governor's Task Force on Driving While Impaired, *see* DWI Final Report at 60-63, the General Assembly codified N.C.G.S. §§ 20-38.6 and 20-38.7.

N.C.G.S. § 20-38.6, entitled "Motions and district court procedure," provides:

(a) The defendant may move to suppress evidence or dismiss charges only prior to trial, except the defendant may move to

dismiss the charges for insufficient evidence at the close of the State's evidence and at the close of all of the evidence without prior notice. If, during the course of the trial, the defendant discovers facts not previously known, a motion to suppress or dismiss may be made during the trial.

(b) Upon a motion to suppress or dismiss the charges, other than at the close of the State's evidence or at the close of all the evidence, the State shall be granted reasonable time to procure witnesses or evidence and to conduct research required to defend against the motion.

(c) The judge shall summarily grant the motion to suppress evidence if the State stipulates that the evidence sought to be suppressed will not be offered in evidence in any criminal action or proceeding against the defendant.

(d) The judge may summarily deny the motion to suppress evidence if the defendant failed to make the motion pretrial when all material facts were known to the defendant.

(e) If the motion is not determined summarily, the judge shall make the determination after a hearing and finding of facts. Testimony at the hearing shall be under oath.

(f) The judge shall set forth in writing the findings of fact and conclusions of law and preliminarily indicate whether the motion should be granted or denied. If the judge preliminarily indicates the motion should be granted, the judge shall not enter a final judgment on the motion until after the State has appealed to superior court or has indicated it does not intend to appeal.

N.C. Gen. Stat. § 20-38.6. At the time defendant was alleged to have committed his offense,[1] N.C.G.S. § 20-38.7, entitled "Appeal to superior court," provided as follows:

(a) The State may appeal to superior court any district court preliminary determination granting a motion to suppress or dismiss. If there is a dispute about the findings of fact, the superior court shall not be bound by the findings of the district

---

1. N.C.G.S. § 20-38.7 has been amended twice since the date defendant was alleged to have committed the offense in the present case. *See* Act of Aug. 7, 2008, ch. 187, § 10, 2008 N.C. Sess. Laws 780; Act of Aug. 30, 2007, ch. 493, § 9, 2007 N.C. Sess. Laws 1497. However, these amendments relate exclusively to a *defendant's* right of appeal, which is not at issue in the present case.

court but shall determine the matter de novo. Any further appeal shall be governed by Article 90 of Chapter 15A of the General Statutes.

(b) The defendant may not appeal a denial of a pretrial motion to suppress or to dismiss but may appeal upon conviction as provided by law.

(c) Notwithstanding the provisions of G.S. 15A-1431, for any implied-consent offense that is first tried in district court and that is appealed to superior court by the defendant for a trial de novo as a result of a conviction, the sentence imposed by the district court is vacated upon giving notice of appeal. The case shall only be remanded back to district court with the consent of the prosecutor and the superior court. When an appeal is withdrawn or a case is remanded back to district court, the district court shall hold a new sentencing hearing and shall consider any new convictions and, if the defendant has any pending charges of offenses involving impaired driving, shall delay sentencing in the remanded case until all cases are resolved.

N.C. Gen. Stat. § 20-38.7 (Supp. 2006) (amended 2007 and 2008). The Article further provides that all "trial procedures" set forth therein— which include the procedures established by N.C.G.S. §§ 20-38.6 and 20-38.7—"shall apply to any implied-consent offense litigated in the District Court Division." *See* N.C. Gen. Stat. § 20-38.1 (2007).

Accordingly, based on the plain language of these statutes, when a district court enters a preliminary determination pursuant to N.C.G.S. § 20-38.6(f) indicating that it would grant a defendant's pretrial motion to suppress evidence or dismiss charges made in accordance with N.C.G.S. § 20-38.6(a), the State may appeal to superior court pursuant to N.C.G.S. § 20-38.7(a). On such an appeal, the district court's findings of fact are binding on the superior court and should be presumed to be supported by competent evidence *unless* there is a "dispute about the findings of fact," in which case the matter must be reviewed by the superior court *de novo*. *See* N.C. Gen. Stat. § 20-38.7(a). After considering a matter properly before it according to the appropriate standard of review, the superior court must then enter an order remanding the matter to the district court with instructions to finally grant or deny the defendant's pretrial motion, since the plain language of N.C.G.S. § 20-38.6(f) indicates that the General Assembly intended the *district* court should enter the

final judgment on a defendant's pretrial motion made in accordance with N.C.G.S. § 20-38.6(a). *See* N.C. Gen. Stat. § 20-38.6(f) (providing that the district court "judge shall not enter a final judgment on the motion until after the State has appealed to superior court or has indicated it does not intend to appeal").

In the present case, in its 15 January 2008 Order, the Mecklenburg County Superior Court concluded that "the statutes allowing the State to appeal the [d]istrict [c]ourt determination on [d]efendant's motion to dismiss based on a lack of probable cause" "are in fact unconstitutional" on the following grounds:

a. First, the statutes violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Article I, § 19 of the North Carolina Constitution in that they create a class of defendants separate from any other type of defendant and violate the defendant's fundamental rights; and,

b. Second, the statutes violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article I, § 19 of the North Carolina Constitution in that they give one party, the State of North Carolina, an advantage of immediate appeal over another party, in this instance, the Defendant, before a final judgment is entered; and,

c. Third, pursuant to *State of North Carolina v. Michael Lee Tutt*, 171 N.C. App. 518, 615 S.E.2d 688 (2005), and Article I, § 3 and Article IV, § 1 of the North Carolina Constitution, the North Carolina Supreme Court maintains exclusive authority to make rules of practice and procedure for the General Court of Justice; and,

d. Fourth, that Article I, § 3 and Article IV, § 1 of the Constitution of North Carolina prohibits the North Carolina General Assembly from changing the jurisdiction of the District Court; and,

f.[2] Fifth, that pursuant to Article I, § 3 and Article IV, § 1 of the North Carolina Constitution, the District Court maintains exclusive original jurisdiction of this matter absent specific amendments to the North Carolina Constitution or provisions adopted by the Supreme Court of North Carolina; and,

---

2. The superior court did not include a Conclusion of Law "e" in its 15 January 2008 Order.

g. Sixth, that the statutes violate the Former Jeopardy Clause of the Constitution.

Based on defendant's arguments at the superior court's hearing on his pretrial motion, we conclude that the only challenged statutory provisions in the present case are the following: N.C.G.S. § 20-38.6(a), which required defendant to submit his motion pretrial; N.C.G.S. § 20-38.6(f), which required the district court to enter written findings of fact and conclusions of law on defendant's pretrial motion and restrained the district court from entering a final judgment granting defendant's motion until after the State had the opportunity to appeal to superior court; and N.C.G.S. § 20-38.7(a), which allowed the State to appeal to superior court from the district court's Preliminary Finding indicating that it would grant defendant's pretrial motion. Accordingly, we limit our review to address the constitutionality of N.C.G.S. §§ 20-38.6(a), (f), and 20-38.7(a).

Because the Constitution "is a restriction of powers, and those powers not surrendered are reserved to the people to be exercised by their representatives in the General Assembly, so long as an act is not forbidden, the wisdom and expediency of the enactment is a legislative, not a judicial, decision." *Guilford Cty. Bd. of Educ. v. Guilford Cty. Bd. of Elections*, 110 N.C. App. 506, 510, 430 S.E.2d 681, 684 (1993) (citing *Wayne Cty. Citizens Ass'n v. Wayne Cty. Bd. of Comm'rs*, 328 N.C. 24, 399 S.E.2d 311 (1991)); *see also State v. Warren*, 252 N.C. 690, 696, 114 S.E.2d 660, 666 (1960) ("The legislative department is the judge, within reasonable limits, of what the public welfare requires, and the wisdom of its enactments is not the concern of the courts. As to whether an act is good or bad law, wise or unwise, is a question for the Legislature and not for the courts—it is a political question."). "Therefore, the judicial duty of passing upon the constitutionality of an act of the General Assembly is one of great gravity and delicacy. This Court presumes that any act promulgated by the General Assembly is constitutional and resolves all doubt in favor of its constitutionality." *Guilford Cty. Bd. of Educ.*, 110 N.C. App. at 511, 430 S.E.2d at 684.

"In challenging the constitutionality of a statute, the burden of proof is on the challenger, and the statute must be upheld unless its unconstitutionality clearly, positively, and unmistakably appears beyond a reasonable doubt or it cannot be upheld on any reasonable ground." *Id.* Accordingly, reviewing courts "are mandated to construe any legislative enactment so as to save its constitutionality, if possible, and to avoid a strict interpretation that will result in an absurd

and unconstitutional result." *Cooke v. Futrell*, 37 N.C. App. 441, 444, 246 S.E.2d 65, 67 (1978) (citation omitted).

With these as our guiding principles, we now turn to the parties' arguments.

I.

[3] The State first contends the superior court erred by relying on *State v. Tutt*, 171 N.C. App. 518, 615 S.E.2d 688 (2005), to support its conclusions that the General Assembly violated Article I, § 3 and Article IV, § 1 of the North Carolina Constitution by enacting N.C.G.S. §§ 20-38.6(a), (f), and 20-38.7(a), and that the Constitution "prohibits the North Carolina General Assembly from changing the jurisdiction of the District Court" absent a constitutional amendment authorizing it to do so.

The General Assembly is empowered to "prescribe the jurisdiction and powers of the District Courts," *see* N.C. Const. art. IV, § 12, cl. 4, and, "within constitutional limitations," to "circumscribe" the jurisdiction of the Superior Courts. *See* N.C. Const. art. IV, § 12, cl. 3 (*"Except as otherwise provided by the General Assembly*, the Superior Court shall have original general jurisdiction throughout the State.") (emphasis added); *Bullington v. Angel*, 220 N.C. 18, 20, 16 S.E.2d 411, 412 (1941) ("The Legislature, within constitutional limitations, can fix and circumscribe the jurisdiction of the courts of this State.").

Additionally, while the Constitution provides that "[t]he Supreme Court shall have exclusive authority to make rules of procedure and practice for the Appellate Division," it also provides that the General Assembly "may make rules of procedure and practice for the Superior Court and District Court Divisions." *See* N.C. Const. art. IV, § 13, cl. 2. The Constitution further provides that the General Assembly may delegate its authority to make rules of procedure and practice for the Superior and District Court Divisions to the Supreme Court and, if it does so, "the General Assembly may, nevertheless, alter, amend, or repeal any rule of procedure or practice adopted by the Supreme Court for the Superior Court or District Court Divisions." *See id.*

In *Tutt*, the threshold issue before this Court was whether the General Assembly unconstitutionally contravened the Supreme Court's "exclusive authority to make rules of procedure and practice for the Appellate Division" when it amended Rule 103 of the North Carolina Rules of Evidence. *See id.*; *Tutt*, 171 N.C. App. at 520-21, 615

S.E.2d at 690-91. As amended by the Legislature, Rule 103 "permit[ted] *appellate review* of an evidentiary ruling even [when] the party fail[ed] to object at trial as required by [Appellate Rule] 10(b)(1)." *See Tutt*, 171 N.C. App. at 518-19, 615 S.E.2d at 689 (emphasis added). In other words, the General Assembly's statutory amendment to Rule 103 was "in direct conflict with Rule 10(b)(1) of the Rules of Appellate Procedure as interpreted by our case law on point." *Id.* at 521, 615 S.E.2d at 690. Although this Court ultimately decided to hear the matter by exercising its discretion pursuant to Appellate Rule 2, *see id.* at 524, 615 S.E.2d at 693, we determined that the General Assembly was seeking "to make a rule of procedure and practice for the Appellate Division that lies within the exclusive authority of our Supreme Court." *Id.* at 521, 615 S.E.2d at 691 (internal quotation marks omitted). Consequently, this Court held that, "to the extent that [N.C.G.S.] § 8C-1, Rule 103(a)(2) is inconsistent with [Appellate Rule] 10(b)(1), it must fail." *Id.* at 524, 615 S.E.2d at 692-93.

However, *Tutt* is distinguishable from the present case because, as we determined above, the procedures of N.C.G.S. §§ 20-38.6(a), (f), and 20-38.7(a) do not apply to the Appellate Division. Instead, by enacting these provisions, the General Assembly created rules which affect the procedure and practice of the Superior and District Court Divisions *only*, as it is constitutionally permitted to do pursuant to Article IV, § 13, Clause 2 of the North Carolina Constitution. Therefore, we hold the superior court erred by concluding in its 15 January 2008 Order that *Tutt* controlled in this matter.

[4] Because the General Assembly is constitutionally authorized to create rules of procedure and practice for the Superior and District Courts, to prescribe the jurisdiction and powers of the District Courts, and to circumscribe the jurisdiction of the Superior Courts, we further hold a constitutional amendment is not required for the General Assembly to promulgate a rule of procedure and practice pertaining exclusively to the Superior and District Courts. The superior court's ruling to the contrary was in error.

[5] We note that defendant argues in his brief that N.C.G.S. §§ 20-38.6(a), (f), and 20-38.7(a) violate the separation of powers doctrine of the North Carolina Constitution. The Separation of Powers Clause of the North Carolina Constitution provides that "[t]he legislative, executive, and supreme judicial powers of the State government shall be forever separate and distinct from each other." N.C. Const. art. I, § 6. However, the trial court did not conclude that the

challenged statutory provisions violated this constitutional provision, and defendant failed to cross-assign as error the trial court's failure to do so. Nevertheless, even had the issue properly been before us, we discern no usurpation of the judicial power of the State by the Legislature in the enactment of these statutory provisions.

II.

**[6]** The State next contends, and we agree, the superior court erred by concluding that N.C.G.S. §§ 20-38.6(a), (f), and 20-38.7(a) violate the Former Jeopardy Clause of the United States Constitution.

"Two bases exist in North Carolina for the defense of former jeopardy: the state Constitution and the federal Constitution." *State v. Brunson*, 327 N.C. 244, 247, 393 S.E.2d 860, 863 (1990), *aff'g, State v. Brunson*, 96 N.C. App. 347, 351, 385 S.E.2d 542, 544 (1989). While "[t]he North Carolina Constitution does not specifically recognize former jeopardy as a defense, . . . [our Supreme] Court has interpreted the language of the law of the land clause of our state Constitution as guaranteeing the common law doctrine of former jeopardy." *Id.* Further, "[i]t is well settled that a state cannot establish laws, rules, or procedures that would deprive a defendant of his federally guaranteed freedom from former jeopardy." *Id.*

"The Double Jeopardy Clause protects against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense." *State v. Gardner*, 315 N.C. 444, 451, 340 S.E.2d 701, 707 (1986). "It is a fundamental and sacred principle of the common law, deeply imbedded in our criminal jurisprudence, that no person can be twice put in jeopardy of life or limb for the same offense." *State v. Crocker*, 239 N.C. 446, 449, 80 S.E.2d 243, 245 (1954). This principle of double jeopardy, or former jeopardy, "benefits the individual defendants by providing repose; by eliminating unwarranted embarrassment, expense, and anxiety; and by limiting the potential for government harassment." *Brunson*, 327 N.C. at 249, 393 S.E.2d at 864. "It benefits the government by guaranteeing finality to decisions of a court and of the appellate system, thus promoting public confidence in and stability of the legal system. The objective is to allow the prosecution one complete opportunity to convict a defendant in a fair trial." *Id.*

"The rule in North Carolina is that in nonjury trials, *jeopardy attaches when the court begins to hear evidence or testimony.*" *Id.*

(emphasis added). In other words, "until a defendant is 'put to trial *before the trier of the facts,* whether the trier be a jury or a judge,' jeopardy does not attach." *Brunson,* 96 N.C. App. at 351, 385 S.E.2d at 544 (emphasis added) (quoting *United States v. Jorn,* 400 U.S. 470, 479, 27 L. Ed. 2d 543, 553 (1971)). This rule "reflects an attempt to connect the consequences of jeopardy (that is, the risk of conviction) with that element which could result in conviction (the introduction of evidence)." *Brunson,* 327 N.C. at 250, 393 S.E.2d at 865. Accordingly, for nonjury trials in district court where the court presides both as trier of fact and as judge, "the potential for conviction exists [only] when evidence or testimony against a defendant is presented to and accepted . . . by the district court [as the trier of fact] for an adjudication of [the] defendant['s] guilt." *State v. Ward,* 127 N.C. App. 115, 121, 487 S.E.2d 798, 802 (1997) (citation omitted). Conversely, when the court is "presented" with evidence or testimony for its consideration of a pretrial motion on a question of law, jeopardy has not yet attached to the proceeding.

The General Assembly, by enacting N.C.G.S. § 20-38.6(a), has required that a defendant charged with an implied-consent offense move to suppress evidence or dismiss charges in district court "*only prior to trial*" and, when not determined summarily, such a motion must be decided only after a hearing by the district court judge. *See* N.C. Gen. Stat. § 20-38.6(a), (e) (emphasis added). Thus, at the time a defendant's *pretrial* motions to suppress or dismiss are made, heard, and decided by the district court, the defendant has not yet been "put to trial before the trier of fact," and, so, jeopardy has not yet attached to the proceedings. *See Brunson,* 96 N.C. App. at 351, 385 S.E.2d at 544 (internal quotation marks omitted). Therefore, we hold the State's right to appeal a district court's preliminary determination indicating that it would grant a defendant's pretrial motion to suppress or dismiss made in accordance with N.C.G.S. § 20-38.6(a) does not deprive defendants charged with implied-consent offenses of their guaranteed freedom from former jeopardy.

Moreover, in *State v. Morgan,* 189 N.C. App. 716, 660 S.E.2d 545, *supersedeas and disc. review denied,* 362 N.C. 686, 671 S.E.2d 329 (2008), this Court wrote: "Finally, we observe in passing that, as the law now stands in North Carolina [after the enactment of N.C.G.S. §§ 20-38.6 and 20-38.7], . . . [t]he General Assembly has seen fit to ensure that evidentiary questions in district court are *now decided prior to the point at which jeopardy would attach* to a DWI defendant." *Morgan,* 189 N.C. App. at 722, 660 S.E.2d at 549 (emphasis

added). We recognize that these statutes were "not in force at the time" the *Morgan* case went to trial and that *dicta* is not controlling. *See id.* at 723 n.3, 660 S.E.2d at 549-50 n.3. Nonetheless, the *Morgan* Court's suggestion supports our conclusion that the General Assembly's requirement that defendants move to suppress evidence or dismiss charges *pretrial* before jeopardy attaches precludes these statutory provisions from encroaching on the "constitutional protections afforded by the prohibitions against double jeopardy." *See State v. Priddy*, 115 N.C. App. 547, 551, 445 S.E.2d 610, 613, *disc. review denied*, 337 N.C. 805, 449 S.E.2d 751 (1994).

Further, the United States Supreme Court has held "that 'a judgment that the evidence is legally insufficient to sustain a guilty verdict constitutes an acquittal for purposes of the Double Jeopardy Clause.' " *Morgan*, 189 N.C. App. at 720, 660 S.E.2d at 548 (quoting *Smalis v. Pennsylvania*, 476 U.S. 140, 142, 90 L. Ed. 2d 116, 120 (1986)). Accordingly, "[a]fter such a judgment has been entered, 'the Double Jeopardy Clause bars an appeal by the prosecution not only when it might result in a second trial, but also if reversal would translate into further proceedings devoted to the resolution of factual issues going to the elements of the offense charged.' " *Id.* (quoting *Smalis*, 476 U.S. at 142, 90 L. Ed. 2d at 120).

In the present case, N.C.G.S. § 20-38.6(a) expressly excepts from its pretrial motion requirement any motion to dismiss for insufficient evidence. *See* N.C. Gen. Stat. § 20-38.6(a) ("The defendant may move to suppress evidence or dismiss charges only prior to trial, except the defendant may move to dismiss the charges for insufficient evidence at the close of the State's evidence and at the close of all of the evidence without prior notice."). Nonetheless, we underscore that any motions to dismiss for insufficient evidence made by a defendant charged with an implied-consent offense and determined in favor of the defendant by the district court are not appealable by the State to the superior court pursuant to these statutes, since "the State may not appeal such a judgment when 'it is plain that the District Court . . . evaluated the Government's evidence and determined that it was legally insufficient to sustain a conviction.' " *Morgan*, 189 N.C. App. at 720, 660 S.E.2d at 548 (omission in original) (quoting *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 572, 51 L. Ed. 2d 642, 651 (1977)).

Finally, we recognize that N.C.G.S. §§ 20-38.6(a), (f), and 20-38.7(a) do not expressly preclude the State from appealing motions to suppress or dismiss made by defendants *during* trial

based on newly discovered facts. *See* N.C. Gen. Stat. § 20-38.6(a) ("If, during the course of the trial, the defendant discovers facts not previously known, a motion to suppress or dismiss may be made during the trial."). Since statutes authorizing an appeal by the State in a criminal case must be strictly construed, *see Harrell*, 279 N.C. at 466-67, 183 S.E.2d at 640, we also hold, by enacting N.C.G.S. §§ 20-38.6(a), (f), and 20-38.7(a), the General Assembly has granted the State a right of appeal to superior court *only* from a district court's preliminary determination indicating that it would grant a defendant's pretrial motion to suppress evidence or dismiss charges on an implied-consent offense which (1) is made and decided in district court at a time *before* jeopardy has attached to the proceedings, i.e., before the district court sits as the trier of fact to adjudicate the defendant's guilt, and (2) is "entirely unrelated to the sufficiency of evidence as to any element of the offense or to defendant's guilt or innocence." *See Priddy,* 115 N.C. App. at 551, 445 S.E.2d at 613. In other words, N.C.G.S. §§ 20-38.6(a), (f), and 20-38.7(a) should not be construed to grant the State a right of appeal to superior court when the district court grants a defendant's motion to suppress evidence or dismiss charges *during* trial based on "facts not previously known" which are only discovered by defendant "during the course of the trial." *See* N.C. Gen. Stat. § 20-38.6(a). Rather, based on the recommendations in the Final Report of the Governor's Task Force on Driving While Impaired, *see* DWI Final Report at 21, as well as the enabling legislation of Article 2D derived therefrom, *see* Motor Vehicle Driver Protection Act of 2006, ch. 253, § 5, 2006 N.C. Sess. Laws 1178, 1180-83, it is our opinion that the General Assembly intended the pretrial motions to suppress evidence or dismiss charges made in accordance with N.C.G.S. § 20-38.6(a) to address only procedural matters including, but not limited to, delays in the processing of a defendant, limitations imposed on a defendant's access to witnesses, and challenges to the results of a breathalyzer.

Accordingly, since "[w]hether a statute survives a double jeopardy constitutional analysis . . . depend[s] on . . . what the statute accomplishes in reality," *State v. Wood,* 185 N.C. App. 227, 237, 647 S.E.2d 679, 687 (internal quotation marks omitted), *disc. review denied,* 361 N.C. 703, 655 S.E.2d 402 (2007), we hold the superior court erred by concluding that the challenged provisions of N.C.G.S. §§ 20-38.6 and 20-38.7 violate the Former Jeopardy Clause of the United States Constitution.

## III.

The State next contends, and we agree, the superior court erred by concluding that N.C.G.S. §§ 20-38.6(a), (f), and 20-38.7(a) violate the Due Process Clause of the United States Constitution and of the North Carolina Constitution "in that they give one party, the State of North Carolina, an advantage of immediate appeal over another party, in this instance, the [d]efendant, before a final judgment is entered."

"Our courts have long held that [t]he law of the land clause has the same meaning as due process of law under the Federal Constitution." *State v. Guice*, 141 N.C. App. 177, 186, 541 S.E.2d 474, 480 (2000) (alteration in original) (internal quotation marks omitted), *disc. review allowed for limited purpose and supersedeas denied*, 353 N.C. 731, 551 S.E.2d 112 (2001), *modified and aff'd on remand*, 151 N.C. App. 293, 564 S.E.2d 925 (2002). Due process "provides two types of protection for individuals against improper governmental action. Substantive due process protection prevents the government from engaging in conduct that shocks the conscience, or interferes with rights implicit in the concept of ordered liberty." *State v. Thompson*, 349 N.C. 483, 491, 508 S.E.2d 277, 282 (1998) (citation and internal quotation marks omitted). "Procedural due process protection ensures that when government action depriving a person of life, liberty, or property survives substantive due process review, that action is implemented in a fair manner." *Id.* (internal quotation marks omitted).

"Substantive due process is a guaranty against arbitrary legislation, demanding that the law shall not be unreasonable, arbitrary or capricious, and that the law be substantially related to the valid object sought to be obtained." *State v. Joyner*, 286 N.C. 366, 371, 211 S.E.2d 320, 323, *appeal dismissed*, 422 U.S. 1002, 45 L. Ed. 2d 666 (1975). Thus, "[s]ubstantive due process may be characterized as a standard of reasonableness, and as such it is a limitation upon the exercise of the police power." *Guice*, 141 N.C. App. at 188, 541 S.E.2d at 481 (internal quotation marks omitted); *see also State v. Dobbins*, 277 N.C. 484, 497, 178 S.E.2d 449, 457 (1971) ("The police power of the State extends to all the compelling needs of the public health, safety, morals and general welfare. Likewise, the liberty protected by the Due Process and Law of the Land Clauses of the Federal and State Constitutions extends to all fundamental rights of the individual.").

"The fundamental premise of procedural due process protection is notice and the opportunity to be heard." *Peace v. Emp. Sec.*

*Comm'n of N.C.*, 349 N.C. 315, 322, 507 S.E.2d 272, 278 (1998) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 84 L. Ed. 2d 494, 503 (1985)). "Moreover, the opportunity to be heard must be 'at a meaningful time and in a meaningful manner.' " *Id.* (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 14 L. Ed. 2d 62, 66 (1965)).

"In order to determine whether a law violates substantive due process, we must first determine whether the right infringed upon is a fundamental right." *Affordable Care, Inc. v. N.C. Bd. of Dental Exam'rs*, 153 N.C. App. 527, 535, 571 S.E.2d 52, 59 (2002) (citing *Clark v. Sanger Clinic, P.A.*, 142 N.C. App. 350, 542 S.E.2d 668, ·*disc. review denied*, 353 N.C. 450, 548 S.E.2d 524 (2001)). "If the right is constitutionally fundamental, then ·the court must apply a strict scrutiny analysis wherein the party seeking to apply the law must demonstrate that it serves a compelling state interest." *Id.* at 535-36, 571 S.E.2d at 59. "If the right infringed upon is not fundamental in the constitutional sense, the party seeking to apply it need only meet the traditional test of establishing that the law is rationally related to a legitimate state interest." *Id.* at 536, 571 S.E.2d at 59.

**[7]** Defendant first argues that N.C.G.S. § 20-38.6(a) infringes on the right of a person charged with an implied-consent offense in district court to exercise his or her fundamental right to a fair trial, since it requires that such defendants move to suppress evidence· or dismiss charges pretrial without the benefit of any statutory right to pretrial discovery. We disagree.

The United States Supreme Court has recognized that·the fundamental right to a fair trial is "the most fundamental of all freedoms." *See Estes v. Texas*, 381 U.S. 532, 540, 14 L. Ed. 2d 543, 549, *reh'g denied*, 382 U.S. 875, 15 L. Ed. 2d 118 (1965); *see also State v. White*, 331 N.C. 604, 616, 419 S.E.2d 557, 564 (1992) (recognizing that a criminal defendant's right to a fair trial is "fundamental"), *cert. denied*, 519 U.S. 936, 136 L. Ed. 2d 229 (1996). "[T]he fundamental conception of a fair trial includes many of the specific provisions of the Sixth Amendment, such as the right to have the proceedings open to the public, the right to notice of specific charges, the right to confrontation, . . . the right to counsel," the right to be tried before impartial jurors, and the right to the presumption of innocence. *See Estes*, 381 U.S. at 560, 14 L. Ed. 2d at 560; *see also Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1075, 115 L. Ed. 2d 888, 923 (1991) (right to be tried before impartial jurors); *Estelle v. Williams*, 425 U.S. 501, 503, 48 L. Ed. 2d 126, 130 (right to the presumption of innocence), *reh'g denied*, 426 U.S. 954, 49 L. Ed. 2d 1194 (1976).

"[T]he purpose of discovery under our [General S]tatutes is to protect the defendant from unfair surprise by the introduction of evidence he cannot anticipate." *State v. Payne*, 327 N.C. 194, 202, 394 S.E.2d 158, 162 (1990), *cert. denied*, 498 U.S. 1092, 112 L. Ed. 2d 1062 (1991). At present, "[i]n North Carolina, no statutory right to discovery exists for criminal cases originating in district court." *State v. Cornett*, 177 N.C. App. 452, 455, 629 S.E.2d 857, 859, *appeal dismissed and disc. review denied*, 361 N.C. 172, 640 S.E.2d 56 (2006). "Furthermore, it is well-established that there is no Constitutional right to discovery other than to exculpatory evidence." *Id.* at 456, 629 S.E.2d at 859.

N.C.G.S. § 20-38.6(a) expressly provides that, "[i]f, during the course of the trial, the defendant *discovers facts not previously known*, a motion to suppress or dismiss *may be made during the trial*." N.C. Gen. Stat. § 20-38.6(a) (emphasis added). In other words, defendants charged with implied-consent offenses in district court are permitted to make motions to suppress or dismiss *during* trial *if* information not known to them *prior* to trial is first discovered only during the course of the trial. Thus, although, unlike other defendants appearing in district court, N.C.G.S. § 20-38.6(a) generally requires defendants charged with implied-consent offenses to make motions to suppress evidence or dismiss charges prior to trial, the express language of N.C.G.S. § 20-38.6(a) also protects defendants against any disadvantage they could suffer as a result of the absence of a statutory right to discovery in district court, since any "unfair surprise" that might arise from the discovery of "facts not previously known" to a defendant is tempered by allowing defendants to make motions to suppress or dismiss *during* the course of the trial on the basis of newly discovered facts. Therefore, we conclude that the pretrial motion requirement of N.C.G.S. § 20-38.6(a) does not infringe on the fundamental right to a fair trial of defendants charged with implied-consent offenses appearing in district court.

[8] Defendant also asserts that, since N.C.G.S. §§ 20-38.6(f) and 20-38.7(a) do not specify a period of time by which the State must appeal from a district court's preliminary determination indicating that it would grant a defendant's pretrial motion to dismiss or suppress made in accordance with N.C.G.S. § 20-38.6(a), these provisions necessarily infringe on the fundamental right to a speedy trial of those defendants charged with implied-consent offenses appearing in district court. Again, we disagree.

**STATE v. FOWLER**

[197 N.C. App. 1 (2009)]

"The fundamental law of the State secures to every person *formally accused* of crime the right to a speedy and impartial trial, as does the Sixth Amendment to the Federal Constitution . . . ." *State v. Johnson*, 275 N.C. 264, 269, 167 S.E.2d 274, 277-78 (1969). "The guarantee of a speedy trial is designed to protect a defendant from the dangers inherent in a prosecution which has been negligently or arbitrarily delayed by the State: prolonged imprisonment, anxiety and public distrust engendered by untried accusations of crime, lost evidence and witnesses, and impaired memories." *Id.* at 269, 167 S.E.2d at 278. "Undue delay cannot be categorically defined in terms of days, months, or even years; the circumstances of each particular case determine whether a speedy trial has been afforded." *Id.* "Four interrelated factors bear upon the question: the length of the delay, the cause of the delay, waiver by the defendant, and prejudice to the defendant." *Id.* "The burden is on an accused who asserts the denial of his right to a speedy trial to show that the delay was due to the neglect or willfulness of the prosecution." *Id.*

When the State appeals from a district court's preliminary determination indicating that it would grant a defendant's pretrial motion to suppress evidence or dismiss charges made in accordance with N.C.G.S. § 20-38.6(a), such an appeal is authorized pursuant to N.C.G.S. § 20-38.7(a), which does not specify a time by which the State must appeal. Nevertheless, we are not persuaded that the absence of a specified time for the State to appeal a district court's preliminary determination pursuant to N.C.G.S. § 20-38.7(a) necessitates a conclusion by this Court that the challenged provisions of these statutes, as written, infringe on a defendant's fundamental right to a speedy trial. Instead, this Court has recognized that, "[i]n the absence of a statute or rule of court prescribing the time for taking and perfecting an appeal, an appeal must be taken and perfected within a reasonable time." *Teen Challenge Training Ctr., Inc. v. Bd. of Adjust. of Moore Cty.*, 90 N.C. App. 452, 454, 368 S.E.2d 661, 663 (1988) (citing 4A C.J.S. *Appeal and Error* § 428 (1957)). " 'What is a reasonable time must, in all cases, depend upon the circumstances.' " *Id.* (quoting *White Oak Props., Inc. v. Town of Carrboro*, 313 N.C. 306, 311, 327 S.E.2d 882, 886 (1985)).

Accordingly, we conclude that the General Assembly's decision to refrain from establishing a time by which the State must give notice of appeal from a district court's preliminary determination indicating that it would grant a defendant's pretrial motion made in accordance with N.C.G.S. § 20-38.6(a) will require an examination of "the circum-

stances of each particular case" in which a defendant alleges that the State acted in violation of his or her fundamental right to a speedy trial by subjecting that defendant to undue delay. *See Johnson*, 275 N.C. at 269, 167 S.E.2d at 278. Thus, we conclude that the State's appeal from a district court's preliminary determination indicating that it would grant a defendant's pretrial motion made in accordance with N.C.G.S. § 20-38.6(a) on an implied-consent offense charge does not infringe on a defendant's fundamental right to a speedy trial.

Therefore, since N.C.G.S. §§ 20-38.6(a), (f), and 20-38.7(a) do not infringe on the fundamental rights to a fair and speedy trial of those persons charged with implied-consent offenses in district court, we need only determine whether the challenged statutory provisions are "rationally related to a legitimate state interest." *Dixon v. Peters*, 63 N.C. App. 592, 598, 306 S.E.2d 477, 481 (1983) (citing *Williamson v. Lee Optical*, 348 U.S. 483, 99 L. Ed. 563, *reh'g denied*, 349 U.S. 925, 99 L. Ed. 1256 (1955)).

[9] "A single standard" has traditionally determined "whether legislation constitutes an improper exercise of the police power so as to violate the 'law of the land' clause: the law must have a rational, real and substantial relation to a valid governmental objective (i.e., the protection of the public health, morals, order, safety, or general welfare)." *Treants Enters., Inc. v. Onslow Cty.*, 83 N.C. App. 345, 352, 350 S.E.2d 365, 369-70 (1986), *aff'd*, 320 N.C. 776, 360 S.E.2d 783 (1987). "The inquiry is thus two-fold: (1) Does the [statute] have a legitimate objective? and (2) If so, are the means chosen to implement that objective reasonable?" *Id.* at 352, 350 S.E.2d at 370. Nonetheless, "[e]ven if the legislation is seriously flawed and result[s] in substantial inequality, it will be upheld if it is reasonably related to a permissible state objective." *Clark*, 142 N.C. App. at 358, 542 S.E.2d at 674 (second alteration in original) (internal quotation marks omitted).

The enabling legislation of the challenged statutory provisions at issue in the present case arose from the Governor's Task Force on Driving While Impaired—composed of members of the Bar, the Judicial Branch, law enforcement, and the General Assembly—which was responsible for reviewing the General Statues applicable to driving while impaired, reviewing proposals in other states "designed to deter driving while impaired," and recommending "actions to reduce driving while impaired." *See* Exec. Order No. 54, 2004 N.C. Sess. Laws 893-94. In its January 2005 Final Report, the Task Force recognized that, although "[n]o other criminal charge is subject to

th[e] rule" that "a substantial delay in processing a person charged with DWI justifies a dismissal," "under the Constitution, DWI cases are different" and, so, delays in the post-arrest processing of persons charged with an implied-consent offense can result in dismissals. *See* DWI Final Report at 22. Thus, the Task Force suggested that "[a] specific procedure should be developed [for implied-consent offense cases] to prevent dismissals related to delays in processing and by the defendant's lack of access to witnesses." *See id.* at 21. Consequently, the enabling legislation that added Article 2D to Chapter 20 of the General Statutes, which includes N.C.G.S. §§ 20-38.6(a), (f), and 20-38.7(a), specified that one of its objectives was to provide "procedures for investigating, arresting, charging, and judicial processing of impaired driving offenses" as "measures designed to improve the safety of the motoring public of North Carolina." *See* Motor Vehicle Driver Protection Act of 2006, ch. 253, 2006 N.C. Sess. Laws 1178, 1180-83.

Accordingly, we find that the Legislature determined from the facts before it that the pretrial procedures codified in N.C.G.S. §§ 20-38.6(a), (f), and 20-38.7(a) would serve as a means to improve the safety of the motoring public of North Carolina. Since "any act promulgated by the General Assembly is [presumed to be] constitutional and . . . all doubt [must be resolved] in favor of its constitutionality," *see Guilford Cty. Bd. of Educ.*, 110 N.C. App. at 511, 430 S.E.2d at 684, we conclude that the challenged legislation is not "unreasonable, arbitrary or capricious, and . . . [is] substantially related to the valid object sought to be obtained." *See Joyner*, 286 N.C. at 371, 211 S.E.2d at 323. Therefore, we hold N.C.G.S. §§ 20-38.6(a), (f), and 20-38.7(a) do not violate substantive due process.

Defendant challenges the statutory provisions as violative of procedural due process based on the General Assembly's mandate that district courts must first enter preliminary determinations when inclined to rule favorably on a defendant's pretrial motion made in accordance with N.C.G.S. § 20-38.6(a). However, since we have held the challenged statutory provisions do not violate substantive due process, we find no basis upon which the challenged statutory provisions can violate the right to procedural due process of a defendant subject to these procedures. Therefore, we hold the superior court erred when it concluded that N.C.G.S. §§ 20-38.6(a), (f), and 20-38.7(a) violate the Due Process Clause of the United States Constitution and of the North Carolina Constitution.

IV.

**[10]** Finally, the State contends, and we agree, the superior court erred by concluding that N.C.G.S. §§ 20-38.6(a), (f); and 20-38.7(a) violate the Equal Protection Clause of the United States Constitution and of the North Carolina Constitution.

"The Equal Protection Clause of Article I, Section 19 of the North Carolina Constitution and the Equal Protection Clause of Section 1 of the Fourteenth Amendment to the United States Constitution forbid North Carolina from denying any person the equal protection of the laws," *Dep't of Transp. v. Rowe*, 353 N.C. 671, 675, 549 S.E.2d 203, 207 (2001), *cert. denied*, 534 U.S. 1130, 151 L. Ed. 2d 972 (2002), and require that "all persons similarly situated be treated alike." *See Richardson v. N.C. Dep't of Corr.*, 345 N.C. 128, 134, 478 S.E.2d 501, 505 (1996).

"Our [state] courts use the same test as federal courts in evaluating the constitutionality of challenged classifications under an equal protection analysis." *Id.* When evaluating a challenged classification, "[t]he court must first determine which of several tiers of scrutiny should be utilized. Then it must determine whether the [statute] meets the relevant standard of review." *Rowe*, 353 N.C. at 675, 549 S.E.2d at 207.

"Strict scrutiny applies when a [statute] classifies persons on the basis of certain designated suspect characteristics or when it infringes on the ability of some persons to exercise a fundamental right." *Id.*; *see also Graham v. Richardson*, 403 U.S. 365, 372, 29 L. Ed. 2d 534, 541-42 (1971) (stating that classifications based on race, alienage, and national origin "are inherently suspect and subject to close judicial scrutiny"). "Other classifications, including gender and illegitimacy, trigger intermediate scrutiny, which requires the [S]tate to prove that the [statute] is substantially related to an important government interest." *Rowe*, 353 N.C. at 675, 549 S.E.2d at 207. "If a [statute] draws any other classification, it receives only rational-basis scrutiny, and the party challenging the [statute] must show that it bears no rational relationship to any legitimate government interest. If the party cannot so prove, the [statute] is valid." *Id.*

However, "[a] statute is not subject to the [E]qual [P]rotection [C]lause of the [F]ourteenth [A]mendment of the United States Constitution or [A]rticle I § 19 of the North Carolina Constitution *unless* it creates a classification between different groups of people." *State*

*v. Howren*, 312 N.C. 454, 457, 323 S.E.2d 335, 337 (1984) (emphasis added). In the present case, no classification between different groups has been created. *See id.* Instead, pursuant to Article 2D of the General Statutes, *all defendants* charged with an implied-consent offense appearing in district court will be subject to the *same* procedural requirements established by N.C.G.S. §§ 20-38.6(a), (f), and 20-38.7(a), as well as the other statutory provisions in the Article. Defendant makes the unsupported assertion that the classification created by the enactment of Article 2D which violates equal protection is one where defendants charged with an implied-consent offense appearing in district court are subject to different pretrial procedures than all other defendants charged with any other misdemeanor offenses appearing in district court. Nevertheless, since the Article "applie[s] uniformly to all members of the public and does not discriminate against any group," *see id.* at 458, 323 S.E.2d at 338, we conclude that "[t]his classification is not of the type that can be considered a denial of equal protection." *See State v. Garvick*, 98 N.C. App. 556, 564, 392 S.E.2d 115, 119-20, *aff'd per curiam*, 327 N.C. 627, 398 S.E.2d 330 (1990).

Still, even assuming, *arguendo*, that Article 2D does create a classification subject to an equal protection analysis, the challenged statutory provisions neither classify persons on the basis of any designated "suspect" characteristics nor, as we concluded in section III above, infringe on any fundamental rights of the persons subject to these procedures. Accordingly, to determine whether N.C.G.S. §§ 20-38.6(a), (f), and 20-38.7(a), under this "classification," would violate equal protection, we would need only to determine whether the challenged statutory provisions "bear[] some rational relationship to a conceivable legitimate interest of [the] government." *See Richardson*, 345 N.C. at 135, 478 S.E.2d at 506 (internal quotation marks omitted).

As we concluded in section III above, it is our opinion that the Legislature's objective to improve the safety of the motoring public of North Carolina is a legitimate objective and the procedures established by the challenged provisions of these statutes are rationally related to that objective. *See* Motor Vehicle Driver Protection Act of 2006, ch. 253, 2006 N.C. Sess. Laws 1178; *see also Clark*, 142 N.C. App. at 358, 542 S.E.2d at 674 (concluding that, when "[t]he statute at issue . . . neither burdens a suspect class, nor affects a fundamental right[, it] . . . need only satisfy the rational basis level of scrutiny *to withstand both the due process and equal protection challenges*")

(emphasis added). Therefore, we hold N.C.G.S. §§ 20-38.6(a), (f), and 20-38.7(a) do not violate the Equal Protection Clause of the United States Constitution or of the North Carolina Constitution.

V.

**[11]** "When a defendant moves for dismissal, the trial court must determine whether the State has presented substantial evidence of each essential element of the offense charged and substantial evidence that the defendant is the perpetrator." *State v. Cross,* 345 N.C. 713, 716-17, 483 S.E.2d 432, 434 (1997). When ruling on a motion to dismiss for insufficient evidence, the trial court "is to *consider all of the evidence actually admitted,* whether competent or incompetent, which is favorable to the State," *see State v. Earnhardt,* 307 N.C. 62, 67, 296 S.E.2d 649, 653 (1982) (emphasis added), and must consider that evidence "in the light most favorable to the State." *See id.* at 67, 296 S.E.2d at 652. "[T]he State is entitled to every reasonable intendment and every reasonable inference to be drawn from the evidence." *Id.* at 67, 296 S.E.2d at 653. Additionally, a motion to dismiss for insufficient evidence cannot be made pretrial, because only those "defense[s], objection[s], or request[s] which [are] capable of being determined without the trial of the general issue may be raised before trial by motion," *see* N.C. Gen. Stat. § 15A-952 (2007), and a court can *only* consider a motion to dismiss for insufficient evidence *after* the State has had an opportunity to present all of its evidence to the trier of fact *during* trial.

In the present case, the district court entered a "Preliminary Finding Granting Pretrial Motion to *Dismiss,*" (emphasis added), in which it concluded that the arresting officer "did not possess probable cause to arrest and charge [d]efendant with Driving While Impaired." Additionally, both parties characterize defendant's pretrial motion in district court as one to *dismiss,* not *suppress,* for lack of probable cause to arrest. However, the copy of defendant's 2 January 2007 citation included in the record before this Court contains a handwritten notation in the section designated "Court Use Only" stating, "Pretrial Motion to *Suppress* Granted." (Emphasis added.)

A trial court's decision to grant a pretrial motion to *suppress* evidence "does not mandate a pretrial dismissal of the underlying indictments" because "[t]he district attorney may elect to dismiss or proceed to trial without the suppressed evidence and attempt to establish a *prima facie* case." *See State v. Edwards,* 185 N.C. App. 701, 706, 649 S.E.2d 646, 650, *disc. review denied,* 362 N.C. 89, 656

STATE v. FOWLER

[197 N.C. App. 1 (2009)]

S.E.2d 281 (2007). Nevertheless, after concluding that the arresting officer lacked probable cause to arrest defendant, the district court decided that it would *dismiss* the driving while impaired charge against defendant. Consequently, this Court must infer that the district court not only considered whether the officer had probable cause to arrest defendant but, *further*, preliminarily determined that there was insufficient evidence for the State to proceed against defendant on the charge of driving while impaired.

Since there is no indication in the record that the State had the opportunity to present all of its evidence prior to the district court's preliminary determination indicating that it would dismiss the charge against defendant, we believe the superior court erred when it concluded that "it appears the [d]istrict [c]ourt's Conclusions of Law granting the motion to dismiss are based upon the Findings of Fact that are cited in [the court's] Order." Accordingly, we remand this matter to the superior court with instructions to remand the case to the district court to enter a preliminary order indicating its ruling on defendant's motion to *suppress* evidence of his 2 January 2007 arrest for lack of probable cause. If the district court preliminarily allows defendant's motion to suppress, the State may choose to appeal to the superior court from the district court's preliminary determination that it would grant defendant's pretrial motion to suppress pursuant to N.C.G.S. § 20-38.7(a). However, only after the State has had an opportunity to establish a *prima facie* case on the charge in the district court may a motion to dismiss for insufficient evidence be made by defendant and considered by the district court, unless the State elects to dismiss the charge against defendant.

Finally, we realize that under our interpretation of the scheme established by N.C.G.S. §§ 20-38.6(a), (f), and 20-38.7(a), no statutory right of appeal by the State to the Appellate Division exists from a *district court's* final order granting a defendant's pretrial motion to suppress evidence, even though the General Assembly has conferred upon the State a statutory right of appeal to the Appellate Division from a *superior court's* order granting a defendant's pretrial motion to suppress pursuant to N.C.G.S. § 15A-979(c). *See* N.C. Gen. Stat. § 15A-979(c) (2007) ("An order by the superior court granting a motion to suppress prior to trial is appealable to the appellate division of the General Court of Justice prior to trial upon certificate by the prosecutor to the judge who granted the motion that the appeal is not taken for the purpose of delay and that the evidence is essential to the case."). Since we have already determined that a superior court

must remand a matter heard pursuant to N.C.G.S. § 20-38.7(a) to district court for a final entry of judgment on a defendant's pretrial motion, we further recognize that the State will not be able to appeal to the Appellate Division pursuant to N.C.G.S. § 15A-979(c) if the superior court determines that a defendant's pretrial motion to suppress should be granted. Moreover, as we indicated at the outset of this opinion, the State has a right of appeal to the superior court from a district court's final *dismissal* of criminal charges against a defendant pursuant to N.C.G.S. § 15A-1432(a)(1), and the State has a right of appeal to the Appellate Division from a superior court's order affirming a district court's dismissal pursuant to N.C.G.S. § 15A-1432(e). While we are unable to determine whether this seeming incongruity was intentional, or the inadvertent result of hasty draftsmanship of N.C.G.S. §§ 20-38.6(a), (f), and 20-38.7(a), the wisdom of the General Assembly's legislative enactments is not a proper concern of the courts. *See Warren*, 252 N.C. at 696, 114 S.E.2d at 666.

Reversed and Remanded.

Judges BRYANT and BEASLEY concur.