COMMODITIES INTERNATIONAL, INC. v. THAD EURE, SECRETARY
OF STATE; WILLIAM W. COPPEDGE, SECURITIES DEPUTY, AND THE
STATE OF NORTH CAROLINA

No. 7410SC408

(Filed 21 August 1974)

1. Injunctions § 5— restraining enforcement of statute

Ordinarily, an injunction will not lie to restrain the enforcement
of a statute since the constitutionality, defects or application of the
statute may be tested in a prosecution for violation of the statute.

2. Injunctions § 5— restraining enforcement of statute

A party has no standing to enjoin the enforcement of a statute
or ordinance absent a showing that his rights have been impinged or
are imminently threatened by the statute.

3. Declaratory Judgments § 1— determination of whether options are
securities

A declaratory judgment action was appropriate for determination
of whether London options sold by plaintiff brokerage firm are securi-
ties subject to regulation by the State.

4. Corporations § 16— London options — securities — remand

Action to determine whether London commodities options being
sold by plaintiff brokerage firm are "securities" within the meaning
of G.S. 78-2(g) is remanded for consideration by the court of
the mechanics of the options in question.

APPEAL from *McLelland, Judge,* 4 February 1974 Session of
WAKE Superior Court. Heard in the Court of Appeals 30 May
1974.

Plaintiff is a North Carolina corporation with its office and
principal place of business in Durham County. On 10 November
1973, plaintiff's president, Kenneth R. Craft, advised William W.
Coppedge, Securities Deputy with the office of the Secretary of
State, that plaintiff was presently engaged in selling London
options. Coppedge thereupon advised Craft that London options
were "securities" within the meaning of G.S. 78-2(g) and that
their sale without registration with the Secretary of State was
a violation of G.S. 78-23.

On 17 December 1973, plaintiff prayed that the Superior
Court issue a temporary restraining order, restraining the de-
fendants from prosecuting or enjoining plaintiff for the broker-
age of London options pending a hearing for a declaratory
judgment on the question of whether London options are securi-
ties. The temporary restraining order was granted by Judge

Smith, and continued as a preliminary injunction pending the final hearing.

The matter was heard before Judge McLelland at the 4 February 1974 Session of Wake Superior Court, and the parties stipulated, *inter alia:*

"2. Plaintiff is engaged in the business of the brokerage of options on commodity futures contracts offered by sale by the various commodity exchanges in London, England, and more commonly known as London options.

3. London options are options which are covered on the various London exchanges and for which commodity futures contracts exist."

Based on the stipulations of the parties, the court made the following findings of fact and conclusions of law:

"1. The brokerage of London Options by plaintiff entails no financial obligation of plaintiff or the writers of the options to the purchasers, and therefore no evidence of indebtedness is created by these transactions.

2. The premiums paid to plaintiff by purchasers of London Options are prices paid for the rights to the future acquisition of contracts for future delivery of commodities upon presently specified terms with prospect of gain to the payor-purchaser arising from exercise of the options under favorable commodities market conditions and not from the use of the premium.

The payment of such premiums or prices are not, therefore, investments in investment contracts.

3. There is no stipulation and therefore no finding from which the Court might conclude that London Options are commonly known as securities.

4. London Options do not fall within any other statutory definition of security."

The court thereupon permanently enjoined defendants from regulating or prosecuting plaintiff with regard to the brokerage of London options. From this determination, defendants appealed.

*Attorney General Morgan, by Associate Attorney Jarvis, for defendant appellants.*

*Clayton, Myrick and McCain, by Grover C. McCain, Jr., for plaintiff appellee.*

MORRIS, Judge.

The sole question presented for our determination is whether London options are "securities" subject to regulation by the State under the Securities Law, G.S. Chap. 78. If London options fall within the definition of "securities" in G.S. 78-2(g), then their sale is clearly illegal without prior registration with the Secretary of State. G.S. 78-23(b) ; G.S. 78-19; G.S. 78-6.

[1]  At the outset, it behooves us to note that plaintiff's prayer for relief purports to characterize his action both as one for injunctive relief and a declaratory judgment. It is well established that ordinarily an injunction will not lie to restrain the enforcement of a statute, since the constitutionality, defects, or application of the statute may be tested in a prosecution for the violation of the statute. 4 Strong, N. C. Index 2d, Injunctions, § 5.

[2]  A party has no standing to enjoin the enforcement of a statute or ordinance absent a showing that his rights have been impinged or are imminently threatened by the statute. *Surplus Co. v. Pleasants,* 263 N.C. 587, 139 S.E. 2d 892 (1965). The order issuing the injunction must be vacated.

[3]  However, we feel that this action was proper under the Declaratory Judgment Act, (G.S. 1-253 through G.S. 1-267).

> "The courts do not lack power to grant a declaratory judgment merely because a questioned statute relates to penal matters. When a plaintiff has a property interest which may be adversely affected by the enforcement of the criminal statute, he may maintain an action under the Declaratory Judgment Act to determine the validity of the statute in protection of his property rights. (Citations omitted.)" *Jernigan v. State,* 279 N.C. 556, 561, 184 S.E. 2d 259 (1971).

G.S. 78-2(g)  provides as follows:

> "Securities, etc.—The term 'securities' or 'security' shall include any note, stock certificate, stock, treasury stock, bond, debenture, whiskey warehouse receipt, evidence of

indebtedness, transferable certificate of interest or participation, certificate of interest in a profit-sharing agreement, any instrument representing any interest or right in or under any oil, gas or mining lease, fee or title, or rights or interests in land from which petroleum or minerals are, or are intended to be produced, certificate of interest in an oil, gas or mining lease, collateral trust certificate, any transferable share, investment contract, or beneficial interest in or title to property or profits or any contract or agreement in the promotion of a plan or scheme whereby one party undertakes to purchase the increase or production of the other party from the article or thing sold under the plan or scheme, or whereby one party is to receive the profits arising from the increase or production of the article or thing sold under the plan or scheme, or any other instrument commonly known as security."

The defendants contend that the London options are within the coverage of four clauses of this definition. It is their position that London options are:

(a) evidence of indebtedness

(b) investment contracts

(c) instruments commonly known as securities, and

(d) "contract[s] or agreement[s] in the promotion of a plan or scheme whereby one party undertakes to purchase the increase or production of the other party from the article or thing sold under the plan or scheme, or whereby one party is to receive the profits arising from the increase or production of the article or thing sold under the plan or scheme."

We deem it fitting to discuss the distinctions commonly recognized between the London or "Mocatto" option and the "naked option" or "new option". In so doing, we note that the stipulations of the parties at the final hearing are the only portions of the record characterizing the options which are the subject of this proceeding.

The traditional option to buy a commodity futures contract —often referred to as a London option or Mocatto option—is an arrangement whereby an investor purchases an option to buy or sell a given quantity of a commodity for a specified price at a date in the future. A "call option" is the right to buy a futures

contract at a guaranteed price on or before a specified date. A
"put option" is the right to sell a futures contract at a guaran-
teed price on or before a specified date. See, *King Commodity
Company of Texas, Inc. v. State of Texas,* 508 S.W. 2d 439 (Tex.
Civ. App. 1974). The investor's profit is represented by the
difference in the "striking price" (the price of the commodity on
the day the option is purchased) and the price of the commodity
on the date of the exercise of the option. Upon exercising the
option, the investor actually buys or sells the contract for the
commodity. These options are handled through recognized ex-
changes, and they are in fact backed by existing commodities
contracts, although all options referred to as London options by
the sellers are not backed by existing commodity contracts.

The new or naked option has adopted the legal form of
the London option, but it is not backed by an existing commodi-
ties contract. The investor has a "repurchase" agreement with
the broker which provides that upon exercise of the option the
broker repurchases the option from the investor and gives him
his profit on the transaction. Thus, the investor never buys or
sells the contract; rather, he receives cash from the broker.
Some of the present so-called London options take this form. For
a more detailed discussion, see Long, *The Naked Commodity
Option Contract As A Security,* 15 Wm. & Mary L. Rev. 211
(1974).

The definition of "security" in G.S. 78-2(g) appears to be
based in part on § 2(1) of the Securities Act of 1933, 15 U.S.C.
§ 77b(1) (1970), which provides as follows:

"The term 'security' means any note, stock, treasury stock,
bond, debenture, evidence of indebtedness, certificate of
interest or participation in any profit-sharing agreement,
collateral-trust certificate, preorganization certificate or
subscription, transferable share, investment contract, vot-
ing-trust certificate, certificate of deposit for a security,
fractional undivided interest in oil, gas, or other mineral
rights, or, in general, any interest or instrument commonly
known as a 'security', or any certificate of interest or par-
ticipation in, temporary or interim certificate for, receipt
for, guarantee of, or warrant or right to subscribe to or
purchase, any of the foregoing."

The Uniform Securities Law, enacted in 28 States, is identi-
cal to § 2(1) of the Securities Act of 1933, except for oil, gas,

and mineral interests and an exclusion of insurance and annuity contracts. Uniform Securities Act, § 401(1)(3) (1956). The similarity of these statutes to G.S. 78-2(g) dictates our reliance on the decisions of the State and Federal Courts in interpreting them.

The characterization of commodity futures contracts and commoditiy options as securities has never been presented to the appellate courts of this State. In reviewing the Federal decisions and the decisions of the courts of states with statutes similar to G.S. 78-2(g), we note the significance that those courts have placed on the features that distinguish naked options from London options; *i.e.*, that the investor in a naked option never buys or sells the contract, that he receives cash from the broker representing his profit, and that his profit comes from the return on premium dollars in the hands of the broker, rather than from the purchase or sale of an actual futures contract. The courts have also placed considerable emphasis on the fact that the naked option is often directed at the unsophisticated investor who seeks a large profit and wishes to take a passive role. See, for example, *King Commodity Company of Texas, Inc. v. Texas, supra; S.E.C. v. W. J. Howey Co.*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946) (defining "investment contracts"); *International Commodity Trust, Inc. v. Fisher*, 3 Blue Sky Law Rep. ¶ 71,075 (Okla., Dist. Ct., Okla. County, 14 May 1973); *Shaprio v. First Federated Commodity Trust Co.*, 3 Blue Sky Law Rep. ¶ 71,071 (Md. Cir. Ct., Baltimore County, 30 May 1973); *People v. Puts & Callo, Inc.*, 3 Blue Sky Law Rep. ¶ 71,090 (Cal. Super. Ct., L.A. County, 21 June 1973).

For the proposition that futures contracts *per se* are not securities, see *McCurnin v. Kohlmeyer & Co.*, 340 F. Supp. 1338 (E.D. La. 1972); *Schwartz v. Bache & Co.*, 340 F. Supp. 995 (S.D. Iowa 1972); *Sinva v. Merrill, Lynch, Pierce, Fenner & Smith*, 253 F. Supp. 359 (S.D. N.Y. 1966).

[4] One commentator has taken the position that for purposes of the Federal Securities Law, futures contracts will not, by themselves, be treated as securities. Further, he concludes that options to buy futures contracts will not be held to be securities within the meaning of the Securities Act of 1933, the Securities Exchange Act of 1934, or similar State legislation unless the characteristics of a naked option are shown to exist. Long, supra. We, therefore, deem it essential that the trial court have before

it evidence of the mechanics of the commodity options in order to rule on whether the options are securities.

The trial court could properly have taken judicial notice of the mechanics of the true London options, since they are "capable of demonstration by resort to readily accessible sources of indisputable accuracy." 3 Strong, N. C. Index 2d, Evidence, § 3. However, the trial court could not have taken notice—absent evidence—of the operation of the particular options being sold by plaintiff. The court made the following finding of fact:

> "2. The premiums paid to plaintiff by purchasers of London Options are prices paid for the rights to the future acquisition of contracts for future delivery of commodities upon presently specified terms with prospect of gain to the payor-purchaser arising from exercise of the options under favorable commodities market conditions and not from the use of the premium."

This finding is not supported by competent evidence. As we have hereinabove stated, the court had before it only the stipulations of the parties. The record before us lacks sufficient evidence for the determination of whether the securities being sold by plaintiff are securities within the meaning of G.S. 78-2 (g). The cause is remanded for hearing.

Remanded.

Judges HEDRICK and BALEY concur.