STROUD, Judge.
 

 Plaintiff appeals a trial court order dismissing plaintiff's action with prejudice. Defendants each raised several defenses, and the trial court dismissed plaintiff's claims as to both defendants without stating the legal rationale for the dismissal. Because plaintiff has asserted constitutional violations of liberty interests and equal protection under Article I, Section 19 of the North Carolina Constitution, these claims are not barred by sovereign or governmental immunity. Plaintiff also had standing to bring all of his claims except his claim for injunctive relief. But plaintiff's liberty interest claim ultimately fails because he was afforded due process as to his sex offender registration though he failed to exercise his statutory right in Michigan to request removal from the registry before he moved to North Carolina. Plaintiff's equal protection claim fails because the State of North Carolina treated plaintiff exactly as it treats all individuals who have final convictions that require sex offender registration in other states. Because ultimately both of plaintiff's claims fail on the face of the complaint, we affirm the trial court's order of dismissal.
 

 I. Background
 

 In February of 2012, "[a]fter consulting with the local sheriff," plaintiff compulsorily registered as a sex offender in Cleveland County, North Carolina.
 
 In re Bunch
 
 ,
 
 227 N.C.App. 258
 
 , 259,
 
 742 S.E.2d 596
 
 , 598 (2013) ("
 
 Bunch I
 
 "). Plaintiff then petitioned "to terminate his registration requirement" and ultimately prevailed.
 

 Id.
 

 Thereafter, plaintiff filed a civil action,
 
 this action
 
 , against two government employees whom he alleged had wrongfully compelled his unnecessary registration. To understand the background of plaintiff's current appeal, we turn first to plaintiff's original action for termination of his registration as a sex offender.
 
 See generally
 

 In re Bunch
 
 ,
 
 227 N.C.App. 258
 
 ,
 
 742 S.E.2d 596
 
 (2013) ("
 
 Bunch I
 
 ").
 

 A.
 
 Bunch I
 

 In
 
 Bunch I
 

 [i]n April 1993, when he was seventeen years old, petitioner pleaded guilty to third-degree criminal sexual conduct in Wayne County, Michigan for sexual intercourse with a female between the ages of thirteen and fifteen. In Michigan, consensual sexual intercourse between a seventeen-year-old and a person at least 13 years of age and under 16 years of age constituted criminal sexual conduct in the third degree. Petitioner has no other convictions that could be considered reportable sexual offenses.
 

 Nine years later, in July 2002, petitioner's son was born. When his son was seven years old, the Circuit Court for the County of Wayne, Michigan, awarded petitioner sole custody of his child, by order entered 5 November 2009. On 18 January 2012, the Michigan court entered an order allowing petitioner to change the domicile of his child to North Carolina, and petitioner and
 
 *467
 
 his son moved to North Carolina. After consulting with the local sheriff, petitioner registered with the North Carolina Sex Offender Registry on 8 February 2012. He then filed a petition to terminate his registration requirement in superior court, Cleveland County. On 7 June 2012, the superior court held a hearing on his petition, wherein petitioner was represented by counsel and the State was represented by the elected District Attorney for Cleveland County.
 

 At the hearing, petitioner presented the records of his Michigan conviction and records relating to the custody of his son and argued that he was never required to register in North Carolina because the offense for which he was convicted in Michigan is not a reportable conviction, or even a crime, in North Carolina; was not a reportable conviction in Michigan in 1993; and has not been a reportable conviction in Michigan since 1 July 2011. In addition, petitioner presented evidence that he met all requirements under
 
 N.C. Gen. Stat. § 14-208
 
 .12A for termination of registration other than ten years of registration in North Carolina. The State presented no evidence and made no argument. After considering the documents and petitioner's argument, the trial court announced that it was granting the petition on the basis that petitioner was never required to register in North Carolina, rather than on the passage of time. Again, the State registered no objection to the trial court's decision. At the close of the hearing, the trial court executed an order on the preprinted form entitled Petition and Order for Termination of Sex Offender Registration, AOC-CR-263, Rev. 12/11 granting the petition, but also directed petitioner's attorney to prepare a more detailed order including the court's rationale as stated in the rendition of the order in open court for allowing termination of petitioner's registration. The trial court entered its full written order on 19 June 2012. The State filed written notice of appeal from the 19 June order on 19 July 2012.
 

 227 N.C.App. 258
 
 , 259-60,
 
 742 S.E.2d 596
 
 , 597-98 (citations, quotation marks, and brackets omitted).
 

 This Court dismissed the State's appeal because it had not preserved the issue before the trial court.
 
 Id.
 
 at 259,
 
 742 S.E.2d at 597
 
 . The State then petitioned the Supreme Court for discretionary review which was denied.
 
 See
 

 In re Bunch
 
 ,
 
 367 N.C. 224
 
 ,
 
 747 S.E.2d 541
 
 (2013). Thus, ultimately the trial court's order was upheld for plaintiff to be removed from the sex offender registry.
 
 See generally
 

 Bunch I
 
 ,
 
 227 N.C.App. 258
 
 ,
 
 742 S.E.2d 596
 
 ,
 
 disc. rev. denied
 
 ,
 
 367 N.C. 224
 
 ,
 
 747 S.E.2d 541
 
 . With this background in mind, we turn to the action before us.
 

 B. This Case
 

 In August of 2015, plaintiff filed an amended complaint against Ms. Lisa Britton, "supervisor or head administrator of the State's sex offender registration program[,]" for the State Bureau of Investigation in the Department of Public Safety and Mr. Michael Proctor, "administrator of the sex offender registration program" for the Cleveland County Sheriff's Department, based upon his requirement to register which was ultimately overturned in
 
 Bunch I
 
 .
 
 See
 
 id.
 

 Plaintiff alleged that when he moved to North Carolina he was contacted by defendant Proctor. Defendant Proctor informed plaintiff he would need to register as a sex offender. Plaintiff explained to defendant Proctor that he did not believe he should have to register because "his offense in Michigan was not a crime in North Carolina and was no long[er] a mandatory sex registry offense in Michigan[.]" Defendant Proctor informed plaintiff that if he did not register, he would be arrested.
 

 To avoid arrest and criminal prosecution, on 8 February 2012, plaintiff registered "under protest." Thereafter, plaintiff was barred from going to his son's school and accompanying his son to the doctor and was required to move because his apartment was too close to a daycare facility. Plaintiff brought these claims under Article I, Section 19 of the North Carolina Constitution regarding violations of his liberty interests and equal protection. Plaintiff requested damages in excess of $10,000.00.
 

 *468
 
 In September 2015, defendant Proctor answered plaintiff's complaint and pled the affirmative defenses of sovereign immunity based on allegations of the Sheriff's Office's lack of liability insurance coverage; estoppel; plaintiff's failure to mitigate his damages; and failure to state a claim upon which relief could be granted. Also in September 2015, defendant Britton filed a motion to dismiss plaintiff's amended complaint under North Carolina Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction due to sovereign and governmental immunity and Rule 12(b)(6) for failure to state a proper claim. In November of 2015, defendant Proctor filed a motion for judgment on the pleadings, citing North Carolina Rule of Civil Procedure 12(c), "on the grounds the Amended Complaint on file herein fails to state a claim upon which relief may be granted in that Plaintiff was properly advised of state law requirements for sex offender registration upon relocating to North Carolina." On 4 December 2015, the trial court allowed defendants' motions to dismiss. Thus, all claims were dismissed with prejudice. Plaintiff appeals.
 

 II. Basis for Dismissal
 

 The entire substance of the trial court's order dismissing plaintiff's claims reads:
 

 This matter is before the Court upon Defendant Britton's motions to dismiss pursuant to Rule 12(b)(1) and 12(b)(6). The Defendant's motions are allowed and claims against Britton are dismissed with prejudice.
 

 This matter is also before the Court upon Defendant Proctor's motion for judgment on the pleadings pursuant to Rule 12(c). The Defendant's motion is allowed and claims against Proctor are dismissed with prejudice.
 

 So ordered this, the 1
 
 st
 
 day of December, 2015.
 

 Thus, the trial court allowed defendant Britton's motion under North Carolina Rule of Civil Procedure 12(b)(1) and (b)(6) and defendant Proctor's motion under North Carolina Rule of Civil Procedure 12(c). Plaintiff makes several arguments on appeal, but we first consider plaintiff's last argument relating to dismissal based upon North Carolina Rule of Civil Procedure 12(b)(1).
 

 A. Dismissal for Lack of Subject Matter Jurisdiction under Rule 12(b)(1)
 

 We first note that since the trial court did not specifically identify the legal basis for the dismissal, and defendants raised several different grounds for dismissal, we must consider each possible rationale. We will start with sovereign or governmental immunity, since if defendants are protected by sovereign or governmental immunity, the court has no subject matter jurisdiction over plaintiff's claims, and jurisdiction is the essential prerequisite for any claim.
 
 See
 

 Hentz v. Asheville City Bd. of Educ.
 
 ,
 
 189 N.C.App. 520
 
 , 522,
 
 658 S.E.2d 520
 
 , 521-22 (2008) ("Subject matter jurisdiction is a prerequisite for the exercise of judicial authority over any case or controversy.").
 

 Plaintiff has sued both defendants in their official capacities, and not in their individual capacities. "[A] suit against a defendant in his official capacity means that the plaintiff seeks recovery from the entity of which the public servant defendant is an agent."
 
 Meyer v. Walls
 
 ,
 
 347 N.C. 97
 
 , 110,
 
 489 S.E.2d 880
 
 , 887 (1997) (citation omitted). We note that when a county or county agency is the named defendant, the immunity is appropriately identified as governmental immunity; conversely, the doctrine of sovereign immunity applies when suit is brought against the State or one of its agencies.
 
 See
 

 id.
 
 at 104,
 
 489 S.E.2d at 884
 
 . ("Under the doctrine of sovereign immunity, the State is immune from suit absent waiver of immunity. Under the doctrine of governmental immunity, a county is immune from suit for the negligence of its employees in the exercise of governmental functions absent waiver of immunity." (citation omitted)).
 
 [1]
 

 Only plaintiff's last argument addresses the dismissal under Rule 12(b)(1), based upon
 
 *469
 
 sovereign immunity. Plaintiff contends that he "[p]roperly [n]amed [a]ppellees in [t]heir [o]fficial [c]apacities[.]" Defendant Britton argues that there were actually three reasons the trial court properly dismissed pursuant to Rule 12(b)(1) because "[p]laintiff did not allege or identify any waiver of sovereign immunity[,]" "failed to allege sufficient facts in the amended Complaint to establish that there is no adequate remedy available to him such that a direct claim under the Constitution would be allowable[,]" and "lacks standing to bring the amended Complaint or request declaratory or injunctive relief."
 

 Rule 12(b)(1) permits a party to contest, by motion, the jurisdiction of the trial court over the subject matter in controversy.
 
 See
 
 N.C. Gen. Stat. § 1A-1, Rule 12(b)(1) (2015).
 

 Rule 12(b)(1) of the Rules of Civil Procedure allows for the dismissal of a complaint due to a lack of jurisdiction over the subject matter of the claim or claims asserted in that complaint. The standard of review on a motion to dismiss under Rule 12(b)(1) for lack of jurisdiction is
 
 de novo
 
 .
 

 State ex rel. Cooper v. Seneca-Cayuga Tobacco Co.
 
 ,
 
 197 N.C.App. 176
 
 , 181,
 
 676 S.E.2d 579
 
 , 583 (2009) (citation, quotation marks, and brackets omitted).
 

 1. Sovereign Immunity
 

 Defendant Britton argues that
 

 [i]n the Complaint filed by Plaintiff, Defendant Britton, an employee of the State Bureau of Investigation (hereinafter 'SBI') was sued in her official capacity. As such, in her official capacity Defendant Britton is immune from suit absent a waiver....
 

 In order to withstand a motion to dismiss for failure to state a cause of action against government actors, the complaint must allege a valid waiver of immunity.... To establish a waiver of sovereign immunity a plaintiff must specifically allege a waiver in his complaint.
 

 But our courts have thoroughly addressed similar issues and ultimately determined that sovereign immunity is not a bar to a constitutional claim based upon Article I of the North Carolina Constitution:
 

 As a general rule, the doctrine of governmental, or sovereign immunity bars actions against,
 
 inter alia
 
 , the state, its counties, and its public officials sued in their official capacity. Thus, a state may not be sued unless it has consented by statute to be sued or has otherwise waived its immunity from suit.
 

 In the present case, defendants are state officials sued in their official capacity. As they contend on appeal, defendants have not expressly waived sovereign immunity. Defendants further contend that there is no statutory waiver applicable to plaintiff's claim and that the common law waiver of sovereign immunity identified by our Supreme Court in
 
 Corum v. University of North Carolina
 
 ,
 
 330 N.C. 761
 
 ,
 
 413 S.E.2d 276
 
 (1992), does not apply to plaintiff's claim in the present case. We disagree.
 

 In
 
 Corum
 
 , our Supreme Court held that the doctrine of sovereign immunity cannot stand as a barrier to North Carolina citizens who seek to remedy violations of their rights guaranteed by the Declaration of Rights of our Constitution]....
 

 ....
 

 Following
 
 Corum
 
 , in
 
 Peverall v. County of Alamance
 
 ,
 
 154 N.C.App. 426
 
 ,
 
 573 S.E.2d 517
 
 (2002), this Court noted that it is well established that sovereign immunity does not protect the state or its counties against claims brought against them directly under the North Carolina Constitution. In
 
 Sanders v. State Personnel Comm'n
 
 ,
 
 183 N.C.App. 15
 
 ,
 
 644 S.E.2d 10
 
 (2007), this Court again held that sovereign immunity is not available as a defense to a claim brought directly under the state constitution.
 

 However, relying on this Court's opinion in
 
 Petroleum Traders Corp. v. State
 
 ,
 
 190 N.C.App. 542
 
 ,
 
 660 S.E.2d 662
 
 (2008), defendants argue that the holding in
 
 Corum
 
 does not apply to plaintiff's action in the present case because plaintiff's action arises under Article IX, rather than Article I, of our Constitution. In
 
 Petroleum Traders
 
 , we noted that our appellate courts have applied the holding of
 
 Corum
 
 to find a waiver of sovereign immunity only in cases wherein the plaintiff alleged a violation
 
 *470
 
 of a right protected by the Declaration of Rights. Our opinion in
 
 Petroleum Traders
 
 distinguished the holdings in
 
 Sanders
 
 and
 
 Peverall
 
 , noting that the plaintiffs in those cases, as in every other case waiving sovereign immunity based on
 
 Corum
 
 , alleged a violation of a right protected by the Declaration of Rights.
 
 Corum
 
 contains no suggestion of an intention to eliminate sovereign immunity for any and all alleged violations of the N.C. Constitution. Accordingly, we concluded in
 
 Petroleum Traders
 
 that
 
 Corum
 
 is properly limited to claims asserting violation of the plaintiff's personal rights as set out in the N.C. Constitution Declaration of Rights.
 

 ....
 

 ... [O]ur Supreme Court again addressed the issue of waiver of sovereign immunity as against constitutional claims in
 
 Craig v. New Hanover Cty. Bd. of Educ.
 
 ,
 
 363 N.C. 334
 
 ,
 
 678 S.E.2d 351
 
 (2009). In
 
 Craig
 
 , our Supreme Court stated, [t]his Court could hardly have been clearer in its holding in
 
 Corum
 
 : In the absence of an adequate state remedy, one whose state constitutional rights have been abridged has a direct claim against the State under our Constitution. Our Supreme Court emphasized that
 
 Corum
 
 clearly established the principle that sovereign immunity could not operate to bar direct constitutional claims. In
 
 Craig
 
 , our Supreme Court allowed the plaintiff to proceed on his constitutional claims, including not only two claims under Article I, but also one claim under Article IX of our Constitution. Our Supreme Court expressed that to hold otherwise would be contrary to our opinion in
 
 Corum
 
 and inconsistent with the spirit of our long-standing emphasis on ensuring redress for every constitutional injury. Notably, our Supreme Court did not hold that the defendant's assertion of sovereign immunity in
 
 Craig
 
 barred the plaintiff's Article IX claim.
 

 ....
 

 In light of this line of cases allowing constitutional claims to proceed against the State under Article IX of our Constitution, we have likewise uncovered no case in which a plaintiff's Article IX constitutional claim was barred by the defense of sovereign immunity. Moreover, in reviewing the merits of the plaintiff school boards' claims in these cases, neither this Court nor our Supreme Court has acknowledged the possibility that sovereign immunity might bar the plaintiffs' constitutional action under Article IX, Section 7....
 

 ....
 

 Given the long line of cases in North Carolina allowing local boards of education to pursue constitutional claims under Article IX, Section 7 against the State and its agencies as described herein, and in light of our Supreme Court's holding in
 
 Craig
 
 allowing a plaintiff to pursue an Article IX claim in addition to his Article I claims despite the defendants' assertion of sovereign immunity, we hold plaintiff in the present case has sufficiently alleged a common law waiver of sovereign immunity by the State under the principle established by our Supreme Court in
 
 Corum
 
 for plaintiff's direct Article IX constitutional claim.
 

 Richmond Cnty. Bd. of Educ. v. Cowell
 
 ,
 
 225 N.C.App. 583
 
 , 587-91,
 
 739 S.E.2d 566
 
 , 569-71 (2013) (citations, quotation marks, ellipses, and brackets omitted). Therefore, the trial court could not have properly dismissed plaintiff's claims under Article I of the North Carolina Constitution pursuant to 12(b)(1) based on sovereign or governmental immunity.
 
 See
 
 id.
 

 2. Adequate State Remedy
 

 Defendant Britton also contends that plaintiff's removal from the sex offender registry
 
 was
 
 plaintiff's remedy, and thus the Court now has no grounds upon which to hear his current action. Even if we assume that removal from the registry was one form of a remedy, we disagree that this was necessarily an "adequate state remedy," particularly where he has alleged monetary damages and requested other relief. One possible alternative for plaintiff to recover monetary damages from defendants would be our State's tort law, but such a claim would be barred by sovereign immunity and therefore, is not an adequate State remedy.
 
 See
 

 Craig v. New Hanover Cty. Bd. of Educ.
 
 ,
 
 363 N.C. 334
 
 , 339-40,
 
 678 S.E.2d 351
 
 , 355 (2009) ("Here, plaintiff's remedy cannot be said to
 
 *471
 
 be adequate by any realistic measure. Indeed, to be considered adequate in redressing a constitutional wrong, a plaintiff must have at least the opportunity to enter the courthouse doors and present his claim. Under the facts averred by plaintiff here, the doctrine of sovereign immunity precludes such opportunity for his common law negligence claim because the defendant Board of Education's excess liability insurance policy excluded coverage for the negligent acts alleged. Plaintiff's common law cause of action for negligence does not provide an adequate remedy at state law when governmental immunity stands as an absolute bar to such a claim. But as we held in
 
 Corum
 
 , plaintiff may move forward in the alternative, bringing his colorable claims directly under our State Constitution based on the same facts that formed the basis for his common law negligence claim." (footnote omitted)).
 

 Plaintiff here specifically pled he "has no remedy at common law for the conduct complained of herein. A violation of the rights enumerated in Article I of the state constitution, the Declaration of Rights, shall be brought against a defendant in his or her official capacity and is not subject to governmental or sovereign immunity under
 
 Corum
 
 [.]" As a constitutional claim is plaintiff's only way to seek redress without invoking immunity on the part of defendants, some other form of an "adequate state remedy" will not serve as a basis for dismissal under Rule 12(b)(1).
 

 3. Standing
 

 Lastly, as to Rule 12(b)(1), defendant Britton argues "[p]laintiff lacks standing to bring the amended Complaint or request declaratory or injunctive relief."
 

 The party invoking jurisdiction has the burden of proving the elements of standing. As a jurisdictional requirement, standing relates not to the power of the court but to the right of the party to have the court adjudicate a particular dispute. North Carolina courts began to use the term "standing" in the 1960s and 1970s to refer generally to a party's right to have a court decide the merits of a dispute. Standing most often turns on whether the party has alleged "injury in fact" in light of the applicable statutes or caselaw. Here, we must also examine the forms of relief sought.
 
 See
 

 Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.
 
 ,
 
 528 U.S. 167
 
 , 185[,]
 
 120 S.Ct. 693
 
 , 706[,]
 
 145 L.Ed.2d 610
 
 , 629 (2000) ("a plaintiff must demonstrate standing separately for each form of relief sought").
 

 Cherry v. Wiesner
 
 , --- N.C.App. ----, ----,
 
 781 S.E.2d 871
 
 , 876,
 
 disc. rev. denied
 
 ,
 
 369 N.C. 33
 
 ,
 
 792 S.E.2d 779
 
 (2016) (citations omitted).
 

 Plaintiff's complaint requested three forms of relief: (1) a declaratory judgment that his constitutional rights were violated, (2) "[a]n injunction requiring defendant Britton, as supervisor of the registry, to establish a p[re]-deprivation process to allow any person facing registration a meaningful opportunity to be heard as to whether he or she has a reportable conviction
 
 before
 
 being compelled to register" and (3) monetary damages. (Emphasis in original.)
 

 Our Supreme Court has further specified that an action may not be maintained under the Declaratory Judgment Act to determine rights, status, or other relations unless the action involves a present actual controversy between the parties. A declaratory judgment may be used to determine the construction and validity of a statute, but the plaintiff must be directly and adversely affected by the statute. Most recently, our Supreme Court has explained that a declaratory judgment should issue (1) when it will serve a useful purpose in clarifying and settling the legal relations at issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceeding.
 

 Wake Cares, Inc. v. Wake Cty. Bd. of Educ.
 
 ,
 
 190 N.C.App. 1
 
 , 11,
 
 660 S.E.2d 217
 
 , 223-24 (2008),
 
 aff'd
 
 ,
 
 363 N.C. 165
 
 ,
 
 675 S.E.2d 345
 
 (2009) (citations, quotation marks, and brackets omitted). If the trial court entered a declaratory judgment stating that defendant's wrongful placement on the sex offender registry violated his constitutional rights that would indeed "clarify [ ] and settl[e]" one portion of "the legal relations at issue" and
 
 *472
 
 "terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceeding[;]" thus, plaintiff had standing to request a declaratory judgment.
 

 Id.
 

 As to plaintiff's request for an injunction,
 

 [i]t is well established that ordinarily an injunction will not lie to restrain the enforcement of a statute, since the constitutionality, defects, or application of the statute may be tested in a prosecution for the violation of the statute.
 

 A party has no standing to enjoin the enforcement of a statute or ordinance absent a showing that his rights have been impinged or are imminently threatened by the statute.
 

 Commodities International, Inc. v. Eure, Sec. of State
 
 ,
 
 22 N.C.App. 723
 
 , 725,
 
 207 S.E.2d 777
 
 , 779 (1974) (citation omitted). Plaintiff's claim for an injunction goes beyond asking "to restrain the enforcement of a statute" but instead asks the trial court to order the State to establish a new legal process applicable to all future registrants.
 

 Id.
 

 We find no legal basis for a private party to have standing to
 
 require
 
 a specific modification of our current statutes.
 
 See generally
 
 id.
 

 Plaintiff is requesting that one state employee, defendant Britton, be ordered to modify how individuals are placed on the sex offender registry. This change could only occur through changes to our current statutes, and plaintiff does not have standing to request this relief, particularly where his registration has already been terminated, and he cannot benefit from any such future legal process.
 
 See generally
 
 id.
 

 Thus, the trial court properly dismissed plaintiff's request for an injunction pursuant to Rule 12(b)(1).
 

 Lastly, defendant Britton argues that "Plaintiff has failed to identify any action taken by Defendant Britton that caused any harm to Plaintiff." "As a general matter, the North Carolina Constitution confers standing on those who suffer harm[.]"
 
 Mangum v. Raleigh Bd. of Adjust.
 
 ,
 
 362 N.C. 640
 
 , 642,
 
 669 S.E.2d 279
 
 , 281 (2008). Plaintiff's complaint has sufficiently alleged harm from his compelled registration. Whether defendant Britton is liable for that harm is a different question, but plaintiff has identified harm caused by his registration.
 
 See generally
 
 id.
 

 Therefore, the trial court properly granted defendant Britton's Rule 12(b)(1) motion as to plaintiff's request for an injunction. Thus, from here on, we need only consider the trial court's dismissal of plaintiff's requests for declaratory judgment and monetary damages.
 

 B. Dismissal as to Defendant Britton under Rule 12(b)(6)
 

 Defendant Britton also based her motion to dismiss upon Rule 12(b)(6).
 

 The standard of review of an order granting a 12(b)(6) motion is whether the complaint states a claim for which relief can be granted under some legal theory when the complaint is liberally construed and all the allegations included therein are taken as true. On a motion to dismiss, the complaint's material factual allegations are taken as true. Dismissal is proper when one of the following three conditions is satisfied: (1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim. On appeal of a 12(b)(6) motion to dismiss, this Court conducts a
 
 de novo
 
 review of the pleadings to determine their legal sufficiency and to determine whether the trial court's ruling on the motion to dismiss was correct.
 

 Burgin v. Owen
 
 ,
 
 181 N.C.App. 511
 
 , 512,
 
 640 S.E.2d 427
 
 , 428-29 (2007) (citations and quotation marks omitted).
 

 Although well-pleaded factual allegations of the complaint are treated as true for purposes of a 12(b)(6) motion, conclusions of law or unwarranted deductions of facts are not admitted.
 

 A complaint is not sufficient to withstand a motion to dismiss if an insurmountable bar to recovery appears on the face of the complaint. Such an insurmountable bar may consist of an absence of law to support a claim, an absence of facts sufficient
 
 *473
 
 to make a good claim, or the disclosure of some fact that necessarily defeats the claim.
 

 Mitchell v. Pruden
 
 , --- N.C.App. ----, ----,
 
 796 S.E.2d 77
 
 , 81 (2017) (citations and quotation marks omitted). Both of plaintiff's claims are based upon Article I, Section 19 of the North Carolina Constitution which provides:
 

 Law of the land; equal protection of the laws.
 

 No person shall be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, or in any manner deprived of his life, liberty, or property, but by the law of the land. No person shall be denied the equal protection of the laws; nor shall any person be subjected to discrimination by the State because of race, color, religion, or national origin.
 

 N.C. Const. art. 1, § 19.
 

 1. Liberty Interests-Law of the Land
 

 Plaintiff's first claim was for a violation of his liberty interests. Plaintiff contends "that he was wrongly placed on the state's sex offender registry by Britton and Proctor, violating his protected interest in liberty without any pre-violation opportunity to be heard." Before we address the parts of plaintiff's arguments that are properly before this Court, we must address those that are not. First, plaintiff's brief often focuses on when an
 
 initial
 
 determination is made that allegedly violates a defendant's rights, but that is simply not what happened here nor is the reasoning applicable. Here, the initial determination that defendant was subject to registration was made in Michigan and Michigan conveyed that information to North Carolina. Thus, to the extent plaintiff's arguments rely on law or reasoning regarding due process for initial registration as a sex offender, we will not consider these arguments. Secondly, much of plaintiff's brief focuses on federal or out-of-state law that simply is not binding upon this Court, and thus we will rely upon the law cited by plaintiff that controls in this jurisdiction.
 
 See generally
 

 Herring v. Winston-Salem/Forsyth Cty. Bd. of Educ.
 
 ,
 
 188 N.C.App. 441
 
 , 449,
 
 656 S.E.2d 307
 
 , 313 (2008) ("Plaintiff also cites several out-of-state cases in support of her position. However, these cases are not binding[.]");
 
 Soderlund v. Kuch
 
 ,
 
 143 N.C.App. 361
 
 , 370,
 
 546 S.E.2d 632
 
 , 638 (2001) ("We recognize that with the exception of the United States Supreme Court, federal appellate decisions are not binding upon either the appellate or trial courts of this State." (citation and quotation marks omitted)). Third, plaintiff focuses on arguments as to why he has properly pled a deprivation of his fundamental liberty interests. Again, we take the allegations of the complaint as true,
 
 see
 

 Burgin
 
 ,
 
 181 N.C.App. at 512
 
 ,
 
 640 S.E.2d at 428
 
 , and plaintiff undoubtedly suffered from the consequences of his registration. Plaintiff was the sole caretaker of his son and due to his status on the sex offender registry he was unable to go on school premises, attend school functions and doctor's appointments with his child, and was forced to move. But even if we assume plaintiff has properly pled a loss of some fundamental liberty interests, plaintiff would still need to tie the violation of that interest to the government, or more specifically here, defendants Britton and Proctor:
 

 Our courts have long held that the law of the land clause has the same meaning as due process of law under the Federal Constitution. Due process provides two types of protection for individuals against improper governmental action. Substantive due process protection prevents the government from engaging in conduct that shocks the conscience, or interferes with rights implicit in the concept of ordered liberty. Procedural due process protection ensures that when government action depriving a person of life, liberty, or property survives substantive due process review, that action is implemented in a fair manner.
 

 Substantive due process is a guaranty against arbitrary legislation, demanding that the law shall not be unreasonable, arbitrary or capricious, and that the law be substantially related to the valid object sought to be obtained. Thus, substantive due process may be characterized as a standard of reasonableness, and as such it is a limitation upon the exercise of the police power.
 

 *474
 
 The fundamental premise of procedural due process protection is notice and the opportunity to be heard. Moreover, the opportunity to be heard must be at a meaningful time and in a meaningful manner.
 

 In order to determine whether a law violates substantive due process, we must first determine whether the right infringed upon is a fundamental right. If the right is constitutionally fundamental, then the court must apply a strict scrutiny analysis wherein the party seeking to apply the law must demonstrate that it serves a compelling state interest. If the right infringed upon is not fundamental in the constitutional sense, the party seeking to apply it need only meet the traditional test of establishing that the law is rationally related to a legitimate state interest.
 

 State v. Fowler
 
 ,
 
 197 N.C.App. 1
 
 , 20-21,
 
 676 S.E.2d 523
 
 , 540-41 (2009) (citations, quotation marks, and brackets omitted).
 

 Plaintiff relies primarily upon
 
 In re W.B.M.,
 

 202 N.C.App. 606
 
 ,
 
 690 S.E.2d 41
 
 (2010). In
 
 W.B.M.
 
 , a mother reported to the New Hanover County Department of Social Services that she believed her child was being sexually abused during visitation with his father.
 
 Id.
 
 at 611,
 
 690 S.E.2d at 46
 
 . In October of 2006, the father was interviewed and denied the allegations.
 
 Id.
 
 at 612,
 
 690 S.E.2d at 46
 
 . The father was not contacted again until January 2007 when he was informed that the sexual abuse allegations had been substantiated and he would be placed on the Responsible Individuals List ("RIL").
 
 [2]
 

 Id.
 
 at 612,
 
 690 S.E.2d at 46
 
 .
 

 Within 30 days of being notified of his placement on the RIL, [the father] requested that the DSS Director review that decision. On 27 February 2007, the DSS Director notified [the father] that he was upholding the decision to place [him] on the RIL.
 

 [The father] timely requested that the District Attorney's office review the decision of the DSS Director. On 24 May 2007, New Hanover County Assistant District Attorney Connie Jordan notified [the father] that she was upholding the DSS Director's decision to keep [him] on the RIL.
 

 On 21 June 2007, [the father] filed a Petition for Expunction from the RIL in New Hanover County District Court. After a hearing on 23 August and 12 September 2007, Judge Corpening denied [the father's] expunction request and ordered DSS attorney Dean Hollandsworth to prepare an order with detailed findings of fact.
 

 Although N.C. Gen. Stat. § 7B-323(d) requires that a written order containing findings of fact and conclusions of law be entered within 30 days after conclusion of the expunction hearing, as of 7 July 2008, no order had been entered.
 

 On 7 July 2008, [the father] filed a Motion to Remove Kelly Holt's Name from the Responsible Individual's List, alleging,
 
 inter alia
 
 , that N.C. Gen. Stat. § 7B-323 is unconstitutional. On 30 July 2008, a written order denying Petitioner's Petition for
 
 *475
 
 Expunction was entered. Also on that date, a hearing on Petitioner's Motion to Remove was held, and the trial court orally denied the motion. On 17 October 2008, the trial court entered a written order denying Petitioner's Motion to Remove and declining to find at this stage of the proceeding that N.C. Gen. Stat. § 7B-323 is unconstitutional. From the 30 July and 17 October 2008 orders, [the father] appeal[ed].
 

 Id.
 
 at 613,
 
 690 S.E.2d at 46-47
 
 (quotation marks and brackets omitted).
 

 This Court analyzed the procedures by which an individual is placed on and potentially removed from the RIL and noted there were three distinct stages of review: DSS, district attorney, and the trial court.
 
 Id.
 
 at 607-10,
 
 690 S.E.2d at 43-45
 
 . At every level of review, the reviewer had the responsibility to review the facts and the
 
 discretion
 
 to determine if the individual should be or remain on the list,
 
 id.
 
 at 608-10,
 
 690 S.E.2d at 44-45
 
 , and though in
 
 W.B.M.
 
 , this Court ultimately determined that due process had been violated,
 
 id.
 
 at 623-24,
 
 690 S.E.2d at 53
 
 , the review process renders
 
 W.B.M.
 
 entirely distinguishable from this case.
 
 Contrast
 

 id.
 

 ,
 
 202 N.C.App. 606
 
 ,
 
 690 S.E.2d 41
 
 . In
 
 W.B.M.
 
 , three entities had the discretion and ability to either place or leave the father on the RIL
 
 and
 
 remove him from it.
 
 Id.
 
 at 608-10,
 
 690 S.E.2d at 44-45
 
 . That is not the case here.
 
 See
 

 N.C. Gen. Stat. § 14-208.7
 
 (a) (2011).
 

 Here, North Carolina General Statute § 14-208.7(a)
 
 mandates
 
 that
 

 [a] person who is a State resident and who has a reportable conviction shall be required to maintain registration with the sheriff of the county where the person resides. If the person moves to North Carolina from outside this State, the person shall register within three business days of establishing residence in this State, or whenever the person has been present in the State for 15 days, whichever comes first.
 

 Id
 
 . A reportable conviction is
 

 [a] final conviction in another state of an offense, which if committed in this State, is substantially similar to an offense against a minor or a sexually violent offense as defined by this section, or a
 
 final conviction in another state of an offense that requires registration under the sex offender registration statutes of that state
 
 .
 

 N.C. Gen. Stat. § 14-208.6
 
 (4)(b) (2011) (emphasis added).
 

 The trial court ultimately concluded that "no sex offender registration should have ever been required in North Carolina[.]" Thus, the alleged violations of due process against plaintiff occurred between the time he was required to register, in February of 2012 until June of 2012, when the trial court ordered that his registration be terminated. But unlike in
 
 W.B.M.
 
 , no discretionary reviews took place between February and June of 2012.
 
 Contrast
 

 W.B.M.
 
 ,
 
 202 N.C.App. 606
 
 ,
 
 690 S.E.2d 41
 
 .
 

 Plaintiff's own complaint admits he was aware he had to register as a sex offender, that he did so in Michigan, and that when the Michigan law changed such that his conviction would no longer require registration, he
 
 unsuccessfully
 
 attempted to have his criminal conviction overturned in Michigan. Thus, plaintiff does not dispute that he had "a final conviction in another state of an offense" which at one time required registration under the statutes of Michigan. When the law in Michigan changed and plaintiff was no longer required to be on the registry in Michigan, plaintiff does not allege that he took the proper steps to be removed from the registry in Michigan, and because of this failure, plaintiff's complaint must fail.
 

 While plaintiff seeks to lay the blame upon defendants Britton and Proctor for his time on the sex offender registry, unfortunately for plaintiff, our law does not give defendants any discretion in placing an individual on the sex offender registry.
 
 See
 

 N.C. Gen. Stat. § 14-208.7
 
 (a). The portion of our statutes which required plaintiff's registration was mandatory.
 
 See
 
 id.
 

 ;
 
 see also
 

 N.C. Gen. Stat. § 14-208.6
 
 (4)(b). But plaintiff actually did have both the ability and most importantly for a due process analysis, the opportunity to keep this hardship from taking place before his Michigan registration reached North Carolina.
 
 See
 

 Fowler
 
 , 197 N.C.App. at 20, 676 S.E.2d at 540. Michigan law allows registrants such as plaintiff to petition to be removed
 
 *476
 
 from the sex offender registry. Mich. Comp. Laws. Ann. § 28.728C (2011). Plaintiff failed to petition to be removed from the Michigan registry.
 

 Plaintiff makes many broad arguments regarding our Constitution and the fundamental rights of citizens to be heard before they are deprived of basic liberties, but the facts here are really quite simple: Plaintiff was afforded due process when he pled guilty to a crime in Michigan that required registration. Later, Michigan law changed, plaintiff's offense no longer required registration, and plaintiff had the opportunity to request removal from the sex offender registry in Michigan. Plaintiff then failed to exercise his statutory right in Michigan to request removal from the registry and moved to North Carolina where the law requires him to register because of his Michigan conviction and registration.
 
 [3]
 

 We agree with the trial court that plaintiff failed to state a claim that his liberty interests were violated by defendant Britton since the state of Michigan gave plaintiff the opportunity to be heard and avoid any wrongful deprivation due to the change in statute, but plaintiff failed to exercise that opportunity. Thus, plaintiff is not entitled to a declaratory judgment that "his liberty interest" was violated by defendant Britton nor is plaintiff entitled to monetary relief from defendant Britton, who was performing a non-discretionary function of her job.
 
 See generally
 

 N.C. Gen. Stat. § 14-208.7
 
 (a). This claim was properly dismissed as defendant Britton demonstrated that plaintiff "fail[ed] to state a claim upon which relief [could] be granted." N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) (2015).
 

 2. Equal Protection
 

 Plaintiff's remaining claim was for equal protection.
 

 The Equal Protection Clause of Article I, Section 19 of the North Carolina Constitution and the Equal Protection Clause of Section 1 of the Fourteenth Amendment to the United States Constitution forbid North Carolina from denying any person the equal protection of the laws, and require that all persons similarly situated be treated alike.
 

 Our state courts use the same test as federal courts in evaluating the constitutionality of challenged classifications under an equal protection analysis. When evaluating a challenged classification, the court must first determine which of several tiers of scrutiny should be utilized. Then it must determine whether the statute meets the relevant standard of review.
 

 Fowler
 
 , 197 N.C.App. at 26, 676 S.E.2d at 543-44 (citations, quotation marks, and brackets omitted).
 

 Plaintiff dedicates only two pages of his brief to his equal protection argument. Plaintiff's main contention is that he was treated differently than other 17-year-olds who have had consensual sex with 15-year-olds in the state and were not required to register. But North Carolina did not convict plaintiff of the crime of which he complains; Michigan did. North Carolina also did not determine plaintiff was initially required to be placed on the sex offender registry; Michigan did. Here, the State of North Carolina actually treated plaintiff exactly as it treats all individuals who have a "final conviction in another state of an offense that requires registration under the sex offender registration statutes of that state."
 
 N.C. Gen. Stat. § 14-208.6
 
 (4)(b). To the extent that Michigan no longer required such registration, plaintiff was afforded the opportunity in Michigan to be removed, but did not do so. Again, we agree with the trial court that plaintiff was not entitled to a declaration that "his right to equal protection" was violated nor is plaintiff entitled to monetary relief for defendant Britton's performance of her duties. This claim was properly dismissed, and this argument is overruled because plaintiff "fail [ed] to state a claim upon which relief [could] be granted." N.C. Gen. Stat. § 1A-1, Rule 12(b)(6).
 

 C. Dismissal as to Defendant Proctor under Rule 12(c)
 

 Defendant Proctor made his motion for judgment on the pleadings under
 
 *477
 
 Rule 12(c).
 
 [4]
 

 [I]n ruling upon motions under Rule 12(b)(6) and 12(c), the trial court must take the factual allegations of the complaint as true.... The standard of review for a Rule 12(c) motion is whether the moving party has shown that no material issue of fact exists upon the pleadings and that he is clearly entitled to judgment.
 

 Affordable Care, Inc. v. N. Carolina State Bd. of Dental Examiners
 
 ,
 
 153 N.C.App. 527
 
 , 532,
 
 571 S.E.2d 52
 
 , 57 (2002). Based on the same analyses as above, plaintiff is not entitled to a declaratory judgment that "his liberty interest" or "his right to equal protection" were violated by defendant Proctor nor is plaintiff entitled to monetary relief. Like defendant Britton, defendant Proctor was performing a non-discretionary function of his job.
 
 See generally
 

 N.C. Gen. Stat. § 14-208.7
 
 (a). This claim was properly dismissed as defendant Proctor demonstrated "that no material issue of fact exists upon the pleadings and that he is clearly entitled to judgment."
 

 Id.
 

 This argument is overruled.
 

 III. Conclusion
 

 For the foregoing reasons, we affirm.
 

 Affirmed.
 

 Chief Judge McGEE and Judge INMAN concur.
 

 [1]
 

 Although both defendants raised the defense of sovereign or governmental immunity, defendant Proctor did not address this argument on appeal, and thus we will not either. We are also uncertain whether the trial court considered the defense of immunity as to defendant Proctor since the order says only that his motion was allowed under Rule 12(c).
 

 [2]
 

 "The RIL procedures are triggered by reports of suspected child maltreatment made to the department of social services. State law places an affirmative duty on all individuals and institutions who have cause to suspect that any juvenile is abused, neglected, or dependent to report the case of that juvenile to the director of the department of social services in the county where the juvenile resides or is found. Upon receipt of a report, the director of the department of social services shall make a prompt and thorough assessment in order to ascertain the facts of the case, the extent of the abuse or neglect, and the risk of harm to the juvenile. Within five working days of completing an investigative assessment response that results in a determination of abuse or serious neglect, the director must notify DHHS of the results of the assessment and must give personal written notice to the individual deemed responsible for the abuse or serious neglect. The notice to the responsible individual must include the following: (1) A statement informing the individual of the nature of the investigative assessment response and whether the director determined abuse or serious neglect or both. (2) A statement summarizing the substantial evidence supporting the director's determination without identifying the reporter or collateral contacts. (3) A statement informing the individual that the individual's name has been placed on the responsible individuals list as provided in N.C. Gen. Stat. § 7B-311 [.] (4) A clear description of the actions the individual must take to have his or her name removed from the responsible individuals list."
 
 In re W.B.M.,
 

 202 N.C.App. at 607-08
 
 ,
 
 690 S.E.2d at 44
 
 (citations, quotation marks, ellipses, and brackets omitted).
 

 [3]
 

 Under federal law, states routinely share information regarding residents on their sex offender registries.
 
 See generally
 

 42 U.S.C.A. § 16911
 

 et. seq.
 
 (2013).
 

 [4]
 

 Defendant Proctor's brief addresses the trial court's order as an order granting summary judgment. We were unable to determine whether the trial court relied solely upon the pleadings, as appropriate under Rule 12(c), or if the trial court considered other documents outside the pleadings, which could require us to consider the order as a summary judgment order-and the record did include other documents beyond the pleadings. But since we have no transcript of the motion hearing in the record, we have treated the order according to its terms, as an order allowing a motion for judgment on the pleadings under Rule 12(c).